THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARK A. SIEGEL, *et al.*, ) | |
| ) | |
| *Plaintiffs/Counter-Defendants*, ) | |
| ) | Civil Action No. 05-1717 (JGP) |
| v. ) | |
| ) | |
| RIDGEWELL'S INC., ) | |
| ) | |
| *Defendant/Counter-Plaintiff.* ) | |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO
PRECLUDE THE TESTIMONY OF
PLAINTIFFS' EXPERT STAN V. SMITH**

Before dispositive motions have been filed and long before a trial date has even been set Ridgewell's has filed a motion that is ordinarily presented before trial in the form of a motion *in limine* – to exclude the trial testimony of the plaintiffs' expert witness on the computation of damages. Ridgewell's Motion is totally unsound and unjustified. Scores of courts around the country have accepted and relied upon Dr. Smith's expert testimony. The Court should deny Ridgewell's motion even at this early stage.

## STATEMENT OF FACTS

Contrary to the assertion made in Ridgewell's Motion, the plaintiffs' evidence will establish that the plaintiffs contracted for, and were assured that they would receive, a wedding reception at which no non-kosher food would be served. Ridgewell's representative – who professed to be (and actually was) a *mashgiach* (religious supervisor of kosher events) in the Washington, D.C., area – assured the plaintiffs that she knew

what could and could not be served at a kosher event. She reviewed the planned menu numerous times with the plaintiffs, and it was clear to everyone that, out of respect for the many guests at the wedding (including the groom's parents) who observed Jewish dietary laws, the only fish to be served on the sushi platter was to be tuna and salmon, both of which are kosher fish.

Without notifying the plaintiffs – who had signed a contract stating that the sushi would be served "to order" (*i.e.,* by a sushi chef on the premises) – Ridgewell's contracted out the preparation of the sushi platter to a local sushi vendor who routinely includes shrimp and other shellfish that are well-known to be non-kosher in her sushi. (The vendor has testified in deposition that she has, in the past, received orders for sushi platters that were not to contain shellfish, and that she has filled those orders. In this case, she testified, Ridgewell's gave her no such instruction.)

The plaintiffs – parents of the bride, and the bride and groom themselves – were greatly distressed when the wedding reception that they expected to be kosher turned out to include a food that is known to everyone remotely familiar with Jewish dietary laws as being the ultimate forbidden food – shrimp. They have testified in deposition that their enjoyment and memories of this high point in their lives was totally destroyed. The family relationships that they expected to build on the foundation of this totally joyous occasion have been shattered.

In order to assist the jury in placing a dollar value on the harm that was done to the plaintiffs, we have retained the nation's leading expert in quantifying such damages – Stan V. Smith. Dr. Smith is recognized as the leading expert on "lost enjoyment of life damages." His testimony has been admitted in state and federal courts across the country.

Ridgewell's is now moving to exclude his testimony based on a 1995 Nebraska decision and a 1998 California appellate court decision. These are minor blips when compared with the numerous courts that have admitted Dr. Smith's testimony.

## ARGUMENT

### I.

### DR. SMITH'S EXPERT TESTIMONY HAS BEEN UTILIZED IN 17 FEDERAL CASES AND IN 158 STATE CASES

Ridgewell's asserts in its Motion that "[m]any courts across the country have excluded Dr. Smith's testimony." Ridgewell's Motion, p. 5. Ridgewell's cites only two instances when Dr. Smith's testimony was excluded. Ridgewell's fails to mention the 175 times – 17 in federal court and 158 in state court – when Dr. Smith's testimony was accepted. These instances, as provided to us by Dr. Smith in an up-to-date report, are enumerated in Exhibit 1 to this Response. A similar listing as of February 22, 2006, was provided to Ridgewell's in discovery. Ridgewell's Motion fails to mention these many other cases. In addition to these 175 court proceedings, the enumeration also lists various other forums such as arbitration tribunals which accepted Dr. Smith's testimony. There can hardly be any doubt that the overwhelming weight of authority favors receipt of Dr. Smith's testimony.

## II.

### THE UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT TERMED DR. SMITH'S TESTIMONY "INVALUABLE TO THE JURY"

Dr. Smith testified for the plaintiff in *Sherrod v. Berry*, 629 F. Supp. 159 (N.D. Ill. 1985), *aff'd,* 827 F.2d 195 (7th Cir. 1987), *rev'd on other grounds en banc*, 856 F.2d 802 (7th Cir. 1988). Overruling a defense objection, the District Court allowed Dr. Smith's testimony. The judge said, "The testimony of Stanley Smith as an expert in economics enabled the jury to perform its function in determining the proper measure of damages in this case. This court's ruling allowing him to testify concerning 'the hedonic value of life' was not error." 629 F. Supp. at 164.

On appeal, a panel of the Court of Appeals for the Seventh Circuit said: "The testimony of expert economist Stanley Smith was invaluable to the jury in enabling it to perform its function of determining the most accurate and probable estimate of the damages recoverable for the hedonic value of Ronald's life. The trial court committed no error by admitting that testimony." 827 F.2d at 206.

The panel's decision was thereafter reviewed by the full Seventh Circuit *en banc*. The issue on which rehearing was granted was whether the fact that the victim was unarmed when he was shot by a police officer should have been admitted into evidence. The judgment was reversed on that ground alone, and the *en banc* court did not re-examine the evidentiary ruling that is relevant to this case. Hence the holding that Dr. Smith's testimony was admissible because it was "invaluable to the jury" remains good law.

### III.

### RESPECTED ECONOMISTS SUPPORT ADMISSION OF DR. SMITH'S TESTIMONY

Attached to this Response as Exhibit 2 are copies of affidavits filed by Dr. Gary R. Albrecht, Dr. Robert D. Beam, Dr. Luvonia J. Casperson, Dr. Charles de Seve, Dr. Everett Dillman, Dr. Wolfgang Franz, Dr. Roy F. Gilbert, Dr. Allan S. McCausland, Dr. Stephen T. Riley, Dr. Roger Skurski, Dr. John O. Ward, and Dr. Melvin Z. Wolfson in various legal proceedings. The affiants are expert economists, many holding high academic posts, as is shown by their *curricula vitae*. They attest to the professional status of Dr. Smith's methods in evaluating harm for purposes of monetary recovery in court proceedings.

### IV.

### DR. SMITH'S TESTIMONY IS ADMISSIBLE IN THE DISTRICT OF COLUMBIA UNDER *DAUBERT*

The Supreme Court set forth the standard for assessing reliability of expert testimony in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). The District of Columbia Circuit applied the *Daubert* standard in *Ambrosini v. Labarraque*, 101 F.3d 129 (D.C. Cir. 1996). It held that *Daubert* "involves a two-prong analysis that centers on evidentiary reliability and relevancy." 101 F.3d at 133. According to the court's discussion in *Ambrosini*, the court must "determine first whether the expert's testimony is based on 'scientific knowledge' and second whether the testimony 'will assist the trier of fact to understand or determine a fact in issue.'" *Id.*

The Court of Appeals said that the first prong — evaluating scientific validity — requires consideration of the following factors: "(1) whether the theory or technique can

be and has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the method's known or potential rate of error; and (4) whether the theory or technique finds general acceptance in the relevant scientific community." 101 F.3d at 134. The Court noted, however, "that none of the factors discussed is necessarily applicable in every case or dispositive; nor are the four factors exhaustive." *Id.*

The affidavits in Exhibit 2 establish that Dr. Smith's testimony is based on a theory that has been tested over the years, subjected to peer review, and found general acceptance by those in the field of forensic economics. The economic methodology for the valuation of human life has been tested and studied for several decades. Dr. Smith is also a nationally recognized expert in the field of hedonic damages and loss of enjoyment of life. Dr. Smith's *curriculum vitae* is Exhibit 3. Along with Dr. Michael L. Brookshire (a copy of whose affidavit is Exhibit 4), he co-authored a textbook titled Economic/Hedonic Damages. Dr. Smith's methodology is economically sound, entirely valid, well reviewed, and he provides specialized knowledge that is beyond the knowledge of a lay person. It will assist the jury in quantifying the plaintiffs' damages and surely meets the *Daubert* standard.

## V.

### DR. SMITH'S TESTIMONY IS ADMISSIBLE UNDER RULE 702 OF THE FEDERAL RULES OF EVIDENCE

As Exhibit 1 demonstrates, in almost 200 instances across the country Dr. Smith's testimony was found useful to a trier of fact who had to quantify damages. Dr. Smith is plainly "a witness qualified as an expert by knowledge, skill, experience, training, or

education" to assist the jury in making the otherwise difficult decision of placing a dollar value on the harm suffered by the plaintiffs as a result of Ridgewell's conduct in devastating their wedding ceremony. "[E]xperts have been permitted to testify in civil cases on a wide range of subjects pertinent to damages. Expert testimony on damages frequently will assist the trier of fact because damage calculations often involve complex aspects of economics and mathematics." 29 Wright and Gold, Federal Practice and Procedure § 6264, p. 241 (1997). Ridgewell's also challenges Dr. Smith's potential testimony on the ground that he "never met the plaintiffs." Ridgewell's Motion, p. 8. But it acknowledges – as was established during his deposition – that his usual method of determining facts is to have his assistant conduct telephonic interviews. If that procedure has satisfied the standards of 175 courts around the country, it suffices for this case.

## CONCLUSION

Dr. Smith's testimony is based on a sound economic methodology widely accepted in the field of forensic economics. It will unquestionably assist the trier of fact in this case. Consequently, this Court should deny Ridgewell's Motion To Preclude the Testimony of Dr. Smith.

Respectfully submitted,

Dated: August 25, 2006

__/s/ Nathan Lewin_____
NATHAN LEWIN (D.C. Bar No. 38299)
ALYZA D. LEWIN (D.C. Bar No. 445506)
LEWIN & LEWIN, LLP
1828 L Street, N.W., Suite 901
Washington, D.C. 20036
(202) 828-1000
(202) 828-0909 (fax)

*Attorneys for the Plaintiffs-Counter Defendants*