<u>**List of Exhibits to Memorandum of Points and Authorities
in Support of Defendant's Motion for Summary Judgment**</u>

**Exhibit 1:** Plaintiff Mark Siegel pertinent deposition cites and exhibits

**Exhibit 2:** Plaintiff Judith Siegel pertinent deposition cites

**Exhibit 3:** Plaintiff Michael Berenbaum pertinent deposition cites and answers to Ridgewells' Interrogatories

**Exhibit 4:** Plaintiff Craig Baron pertinent deposition cites and answers to Ridgewells' Interrogatories

**Exhibit 5:** Toby Nann Silberstein pertinent deposition cites

**Exhibit 6:** Jeffrey Wohlberg pertinent deposition cites

**Exhibit 7:** Plaintiff Melissa Patack pertinent answers to Ridgewells' Interrogatories

**Exhibit 8:** Copy of the Contract

**Exhibit 9:** David Keener pertinent deposition cites

**Exhibit 10:** Plaintiff Rebecca Siegel Baron pertinent deposition cites

# EXHIBIT 1

1

1    IN THE UNITED STATES DISTRICT COURT

2        FOR THE DISTRICT OF COLUMBIA

3    ------------------------------x

4    MARK A. SIEGEL, et al.,        )    **ORIGINAL**

5                    Plaintiffs,    )

6        v.                         )  ·Case No.

7    RIDGEWELLS, INC.,              )    1:05CV01717

8        Defendant/Counter-Plaintiff )

9    ------------------------------x

10        Videotaped Deposition of MARK A. SIEGEL

11              Washington, D.C.

12            Thursday, January 19, 2006

13                9:36 a.m.

14

15

16

17

18

19

20    Job No.:  1-70181

21    Pages 1 - 226

22    Reported By:  Joan V. Cain


L.A.D.
REPORTING &
DIGITAL VIDEOGRAPHY

1100 Connecticut Avenue, NW  •  Suite 850, Washington, D.C. 20036
Tel: 202.861.3410  •  800.292.4789  •  Fax: 202.861.3425
Web: ladreporting.com  •  E-mail: lisa@ladreporting.com
Additional Offices: Rockville, MD  •  Baltimore, MD  •  Greenbelt, MD  •  McLean, VA

1    CERTIFICATE OF SHORTHAND REPORTER - NOTARY PUBLIC

2            I, Joan V. Cain, the officer before whom

3    the foregoing proceedings were taken, do hereby

4    certify that the foregoing transcript is a true and

5    correct record of the proceedings; that said

6    proceedings were taken by me stenographically and

7    thereafter reduced to typewriting under my

8    supervision; and that I am neither counsel for,

9    related to, nor employed by any of the parties to

10   this case and have no interest, financial or

11   otherwise, in its outcome.

12           IN WITNESS WHEREOF, I have hereunto set my

13   hand and affixed my notarial seal this _1st_ day of

14   February  200_6_.

15

16   My commission expires:

17   June 15, 2009

18

19   Joan V. Cain

20   NOTARY PUBLIC IN AND FOR THE

21   DISTRICT OF COLUMBIA

22

VIDEOTAPED DEPOSITION OF MARK A. SIEGEL
CONDUCTED ON THURSDAY, JANUARY 19, 2006

15

1   I think this is the whole universe of the documents    09:50:56

2   defined on pages 2 and 3 of the notice.  There may    09:51:00

3   be similar documents that are in the possession,    09:51:03

4   custody, control of others.  That's all.    09:51:06

5          MR. SCHWABER:  So -- fair enough.    09:51:09

6   BY MR. SCHWABER:    09:51:10

7      Q    So as far as your search and gathering, the    09:51:11

8   only category of documents that you believe existed    09:51:13

9   at one point that you haven't produced is the    09:51:18

10  possibility that you had some documents on an AOL    09:51:20

11  account that were since deleted, and AOL is telling    09:51:23

12  you they can't retrieve them?    09:51:26

13     A    Right.  Exactly.    09:51:28

14     Q    Okay.  And are there any categories of    09:51:29

15  documents requested in items 1 through 15 that you    09:51:36

16  believe exists but that you chose not to produce for    09:51:40

17  any reason?    09:51:43

18     A    No.    09:51:43

19     Q    Do you yourself keep kosher?    09:51:44

20     A    No.    09:51:52

21     Q    And both inside the home and outside the    09:51:52

22  home, you don't keep kosher; is that correct?    09:51:54

VIDEOTAPED DEPOSITION OF MARK A. SIEGEL
CONDUCTED ON THURSDAY, JANUARY 19, 2006

16

1    A    We no longer keep kosher inside the home.    09:51:56

2    We did at one -- at one point in our marriage.    09:51:59

3    Q    Okay.  Well, approximately how long has it    09:52:01

4    been since you kept kosher inside your home?    09:52:04

5    A    I know exactly.  Since -- since    09:52:08

6    December 1974.    09:52:13

7    Q    Okay.  And was there some -- how do you    09:52:16

8    recall that date?    09:52:20

9    A    It was -- we kept kosher until our youngest    09:52:23

10   son was killed in an automobile accident.  And then,    09:52:28

11   sort of, religion didn't -- we got out of touch with    09:52:32

12   religion for a few years.    09:52:38

13   Q    Okay.  And the -- and from that date to    09:52:39

14   now, you've never, at any point, kept a kosher at    09:52:46

15   home?    09:52:50

16   A    We -- no.  We don't have two separate    09:52:50

17   dishes and things like that.  We have -- buy kosher    09:52:53

18   poultry and -- and things like that.  But we -- we    09:52:58

19   don't -- we don't have two sets of dishes, if that's    09:53:00

20   what you mean.  But we keep -- we -- the meat that    09:53:03

21   we buy is -- is kosher.    09:53:07

22   Q    And until December of 1974, did you keep    09:53:08

VIDEOTAPED DEPOSITION OF MARK A. SIEGEL
CONDUCTED ON THURSDAY, JANUARY 19, 2006

32

1    kosher dishes in our home.  We didn't have separate            10:08:37

2    kosher dishes in restaurants.  And I knew every one            10:08:41

3    of my guests, including my rabbi, ate in my home and           10:08:43

4    ate in -- on dishes at restaurants that were not --            10:08:47

5    were -- were not kosher dishes.  And that was the              10:08:49

6    level of Kashruth that we were comfortable with.  We           10:08:50

7    wanted kosher food and parve food.                             10:08:53

8       Q    Mr. Siegel, the -- what I'm trying to do is            10:08:56

9    ask you some questions that are narrowly tailored.             10:09:00

10   And my sense is, you're explaining your reasons for            10:09:05

11   an answer.  I may ask you at times, why did you do             10:09:09

12   it that way, in which case I'll ask you for your               10:09:13

13   reasons.  But otherwise, I'm just asking you what, I           10:09:16

14   think, are yes-or-no questions at this point.  So              10:09:18

15   I'll ask you to listen to my question and see if you           10:09:22

16   can answer it that way.  If you can't, then so be              10:09:24

17   it.                                                            10:09:27

18          The dishes that were used to serve the                  10:09:28

19   guests at your wedding, you understood, in advance             10:09:31

20   of the wedding, that those dishes would have been              10:09:35

21   unkosher dishes, correct?                                      10:09:38

22      A    Yes.                                                   10:09:41

VIDEOTAPED DEPOSITION OF MARK A. SIEGEL
CONDUCTED ON THURSDAY, JANUARY 19, 2006

54

| 1 | A    Yes. | 10:29:46 |

1     A    Yes.                                                    10:29:46

2     Q    And so you rejected Ridgewells?                        10:29:47

3     A    Yes.                                                    10:29:51

4     Q    And Ridgewells' proposal to you that you               10:29:52

5  rejected was for their kosher option, including               10:29:56

6  cooking in a kosher facility, using separate dishes,          10:30:02

7  and having a mashgiach for all purposes, correct?             10:30:06

8     A    Yes.                                                    10:30:11

9     Q    And there were charges associated with                 10:30:11

10 that?                                                          10:30:14

11    A    Yes.                                                    10:30:14

12    Q    Add-ons to their contract?                             10:30:14

13    A    I don't know if it was ever presented as an            10:30:17

14 add-on.  I think it was presented as a -- as a                10:30:20

15 per-person charge.                                            10:30:23

16    Q    But you understood you'd be paying for the             10:30:24

17 mashgiach, right?                                             10:30:26

18         MR. LEWIN:  Objection to the form of that              10:30:28

19 question.  Paying for the mashgiach?  I mean, he --           10:30:30

20 the witness has testified there would be additional          10:30:33

21 charges.                                                      10:30:35

22 BY MR. SCHWABER:                                              10:30:36

VIDEOTAPED DEPOSITION OF MARK A. SIEGEL
CONDUCTED ON THURSDAY, JANUARY 19, 2006

58

| | |
|---|---|
| 1  that, she called me and explained the circumstances | 10:33:43 |
| 2  that led to this -- to this problem.  And it was an | 10:33:47 |
| 3  internal Windows' issue.  And she thought she owed | 10:33:51 |
| 4  me an explanation. | 10:33:54 |
| 5      Q    Okay.  And do you recall approximately when | 10:33:55 |
| 6  that was that you had the discussion that led you to | 10:34:00 |
| 7  conclude you're not using Windows anymore? | 10:34:04 |
| 8      A    I'll just ballpark October, but I'm -- I'm | 10:34:12 |
| 9  not -- I'm not really sure. | 10:34:14 |
| 10     Q    So that would have been October '04? | 10:34:15 |
| 11     A    Yes. | 10:34:23 |
| 12     Q    And what'd you do then? | 10:34:24 |
| 13     A    I called -- I called Ridgewells and asked | 10:34:28 |
| 14 for the kosher division and was put through to Toby. | 10:34:30 |
| 15 I either got her directly or got her voice mail. | 10:34:33 |
| 16 But in any case, we spoke.  I told her what had | 10:34:37 |
| 17 happened.  I asked her if -- if the date was still | 10:34:40 |
| 18 available for --- for -- for Ridgewells because we'd | 10:34:42 |
| 19 like to talk to them, and she said, "Yes." | 10:34:46 |
| 20         And then she volunteered that -- that there | 10:34:51 |
| 21 was another option that they could provide, which | 10:34:57 |
| 22 would be kosher food and parve food, but not -- I | 10:34:59 |

VIDEOTAPED DEPOSITION OF MARK A. SIEGEL
CONDUCTED ON THURSDAY, JANUARY 19, 2006

59

| | | |
|---|---|---|
| 1 | don't know if she used the term "bells and | 10:35:03 |
| 2 | whistles," but not all the extra things.  And I | 10:35:06 |
| 3 | said, "That is" -- I said, "I -- we should have been | 10:35:10 |
| 4 | talking about that all along because that's the | 10:35:13 |
| 5 | level that I always wanted: kosher food and parve | 10:35:15 |
| 6 | food."  And I said, "That's great."  And I told my | 10:35:20 |
| 7 | wife that.  And then we went to see Toby, and she | 10:35:22 |
| 8 | had prepared a little tasting of food for us.  And | 10:35:29 |
| 9 | she sat down with my wife, and they started to work | 10:35:32 |
| 10 | out menus -- of kosher menus, kosher entrees, kosher | 10:35:35 |
| 11 | hors d'oeuvres.  And she made it clear to my wife | 10:35:41 |
| 12 | which Ridgewells could do kosher and which couldn't | 10:35:43 |
| 13 | be done kosher.  And we -- we entered into -- my | 10:35:47 |
| 14 | wife entered into a contract, or at least, we | 10:35:51 |
| 15 | thought it was a contract.  It was a -- a long | 10:35:55 |
| 16 | careful delineated menu with charges at the bottom | 10:35:57 |
| 17 | and a sign-in sheet.  And my wife signed that. | 10:36:01 |
| 18 | Q    The discussion about another option that | 10:36:05 |
| 19 | Ridgewells could provide, that came about because | 10:36:23 |
| 20 | you told her you didn't want to go with the kosher | 10:36:25 |
| 21 | option she had presented to you? | 10:36:28 |
| 22 | A    No.  Actually, that's not right. | 10:36:29 |

VIDEOTAPED DEPOSITION OF MARK A. SIEGEL
CONDUCTED ON THURSDAY, JANUARY 19, 2006

60

1    Q    How did -- how did another option come up?    10:36:31

2    A    She put it on -- she put it on the table.    10:36:34

3    I mean, she brought it up when I called her and    10:36:37

4    asked her if the date was available.  And she said,    10:36:39

5    "You know, there is another option.  We could do    10:36:42

6    kosher food and parve food and not have the separate    10:36:44

7    kitchen."    10:36:50

8         And I said, "That -- that is exactly the    10:36:51

9    level of Kashruths that I wanted.  That's perfect."    10:36:53

10   Q    When you rejected Ridgewells the first    10:36:57

11   time, did you tell her that you didn't want to pay    10:36:59

12   for the kosher option that she had presented?    10:37:03

13        MR. LEWIN:  Objection again to the use of    10:37:05

14   the word "rejected."  The witness has not testified    10:37:07

15   that he rejected anything.  He said he chose the    10:37:10

16   other option, not that he rejected anything.  So I    10:37:13

17   object to the use of that word in the question.    10:37:16

18   BY MR. SCHWABER:    10:37:19

19   Q    I believe the witness did say that, but the    10:37:19

20   record will speak for itself.    10:37:21

21        In any respect, the -- the discussion about    10:37:23

22   another option arose because Toby knew that you were    10:37:28

VIDEOTAPED DEPOSITION OF MARK A. SIEGEL
CONDUCTED ON THURSDAY, JANUARY 19, 2006

61

1    interested in another option, right?                      10:37:35

2        A    I never asked for another option.  When I       10:37:37

3    called Toby, it was to talk about that -- that --         10:37:39

4    the proposal.  I mean, we were revisiting the issue.      10:37:44

5    She is the one who mentioned another option.              10:37:48

6        Q    Was it out of the blue?                          10:37:51

7        A    Yeah, actually, it was out of the blue.          10:37:53

8    And we had -- I guess she knew that we had gone           10:37:55

9    with -- with the other caterer because it was a           10:38:00

10   better proposal in all respects, including a better       10:38:02

11   price.  And maybe she put that on the table because       10:38:05

12   this would make it a more competitive price.  But         10:38:08

13   she definitely put it on the table herself.  I            10:38:11

14   didn't ask for that option.                               10:38:14

15       Q    So if Toby --                                    10:38:15

16       A    And when I called my wife and told her           10:38:17

17   there was an option, she was surprised.  And we both      10:38:18

18   thought it was terrific because that's the level of       10:38:22

19   Kashruth that we thought would be good for the            10:38:25

20   wedding.                                                  10:38:28

21       Q    So the level of Kashruth that you were           10:38:28

22   looking for -- Kashruth is K-a-s-h-r-u-t-h.  The          10:38:31

VIDEOTAPED DEPOSITION OF MARK A. SIEGEL
CONDUCTED ON THURSDAY, JANUARY 19, 2006

97

1    and the poultry were kosher.                          13:36:20

2         MR. SCHWABER:  Counsel, there's a lot of         13:36:21

3    things we don't know.  What I'm asking is what we're  13:36:22

4    being sued for here -- what my client's being sued    13:36:25

5    for.  And I want to narrow down the contentions.      13:36:27

6    BY MR. SCHWABER:                                       13:36:29

7         Q    So what I'm asking you, Mr. Siegel, is, Are 13:36:29

8    you aware of any fact that would indicate to you      13:36:33

9    that Ridgewells provided unkosher meat?               13:36:35

10        A    No.                                          13:36:39

11        Q    Are you aware of any fact that would         13:36:39

12   indicate to you that Ridgewells provided any          13:36:43

13   unkosher poultry?                                      13:36:47

14        A    No.                                          13:36:48

15        Q    Okay.  Now, then it says -- as part of your 13:36:48

16   explicit request, it says that, "No dairy product be  13:36:52

17   served at the reception or the meal to conform with   13:36:55

18   Jewish dietary laws."  As it relates to that          13:36:59

19   request, is it your -- what is your understanding as  13:37:06

20   to the reason for no dairy products needing to be     13:37:07

21   served?                                               13:37:10

22        A    Under Kashruth, we don't mix milk and meat. 13:37:11

VIDEOTAPED DEPOSITION OF MARK A. SIEGEL
CONDUCTED ON THURSDAY, JANUARY 19, 2006

105

1    Q    Okay.  Well, why don't we jump to that.     13:44:34

2  There are allegations about that later.  But while   13:44:36

3  we're on that subject, what dairy product do you      13:44:39

4  believe you were served?                              13:44:41

5    A    It's not what I believe.  It's what I was     13:44:42

6  told I was served.  I had -- at the very end of the   13:44:44

7  reception, when I realized that I hadn't had any      13:44:49

8  food at all, a waitress came by with a plate of       13:44:52

9  black bread and smoked salmon.  And I took one of     13:44:58

10  the canapés and took a bite.  And it tasted like it   13:45:03

11  had cream cheese on it.  I looked down and it had     13:45:07

12  cream cheese on it.                                   13:45:10

13        And I said to the server, I said, "What is    13:45:11

14  this?"                                                13:45:15

15        And she said, "It's smoked salmon with       13:45:15

16  cream cheese on black bread."                         13:45:18

17        At which point, I went down three flights    13:45:21

18  and then again in the middle of my reception when I   13:45:23

19  should have been the host and told Toby Nann that     13:45:26

20  she was serving cream cheese at the wedding.  And     13:45:28

21  she said, "It's margarine."                           13:45:31

22        I said, "Look at it.  Taste it.  It's cream  13:45:33

VIDEOTAPED DEPOSITION OF MARK A. SIEGEL
CONDUCTED ON THURSDAY, JANUARY 19, 2006

157

1  question.  I'm sorry.                                    14:33:35

2  BY MR. SCHWABER:                                         14:33:36

3      Q    Let me ask you a different way.  I'll ask       14:33:36

4  you a different question so we'll clarify any            14:33:38

5  confusion.  You told me this morning about your          14:33:41

6  renewed dialogue with Ms. Nann after the                 14:33:45

7  windows' option disappeared for you.  Do you             14:33:52

8  remember that?                                           14:33:53

9      A    Yes.                                            14:33:53

10     Q    Okay.  And at the time of your renewed          14:33:54

11 discussion with Ms. Nann, she said words to the          14:33:56

12 effect of "there's another option for you," correct?     14:33:58

13     A    Right.  Correct.                                14:34:01

14     Q    And that other option was to go without a       14:34:02

15 mashgiach and to have kosher meat and no dairy           14:34:05

16 products, correct?                                        14:34:09

17     A    Correct.                                        14:34:09

18     Q    Okay.  And you chose that other option?         14:34:10

19     A    That's correct.                                 14:34:11

20     Q    But you were presented with both options        14:34:12

21 for you to choose, correct?                              14:34:14

22     A    That's correct.                                 14:34:16

VIDEOTAPED DEPOSITION OF MARK A. SIEGEL
CONDUCTED ON THURSDAY, JANUARY 19, 2006

158

1      Q    Okay.  So you knowingly chose an option          14:34:17

2   that you knew had a less rigid standard of Kashruth      14:34:21

3   than the option you knowingly didn't choose,            14:34:30

4   correct?                                                14:34:33

5      A    I chose -- I chose an option that was           14:34:33

6   consistent with my level of Kashruth, with -- with      14:34:34

7   my community's level of Kashruth, with my               14:34:36

8   synagogue's level of Kashruth, with my friends'         14:34:40

9   level of Kashruth, with my rabbi's level of Kashruth    14:34:44

10  eating in my house, with                                14:34:48

11  Michael -- Dr. Michael Berenbaum's level of Kashruth    14:34:51

12  eating in my house.  Yes, I did that.                   14:34:54

13     Q    That wasn't my question.                        14:34:56

14     A    Oh, I think it was and I think I answered        14:34:57

15  it.                                                     14:34:59

16     Q    Go back to my question because my question      14:34:59

17  was a yes-or-no question.                               14:35:01

18          MS. LEWIN:  Can you please read my last         14:35:16

19  question?                                               14:35:17

20          (The reporter read the record as                14:35:18

21  requested.)                                             14:35:18

22          MS. LINDLEY:  Can you read the last             14:35:34

VIDEOTAPED DEPOSITION OF MARK A. SIEGEL
CONDUCTED ON THURSDAY, JANUARY 19, 2006

159

1    sentence of my answer?                                    14:35:35

2              (The reporter read the record as               14:35:36

3    requested.)                                              14:35:49

4    BY MR. SCHWABER:                                         14:35:49

5        Q    So that last sentence answers my question?      14:35:49

6        A    You don't think "Yes, I did that" answers       14:35:51

7    the question?                                            14:35:54

8        Q    I do.                                           14:35:54

9        A    Okay.                                           14:35:56

10             MR. LEWIN:  And the rest is an explanation,     14:35:56

11   which I think the witness can give with regard to        14:35:58

12   his answer.                                              14:36:00

13   BY MR. SCHWABER:                                         14:36:01

14       Q    The option you chose with a less rigid          14:36:01

15   standard, without a mashgiach, was that kosher or        14:36:12

16   treif, in your mind?                                     14:36:19

17       A    Kosher.                                         14:36:19

18       Q    So if -- getting back to a question I asked     14:36:20

19   you when we started this exercise.  If a guest had       14:36:38

20   come to you in advance of the wedding and said, "Is      14:36:43

21   the wedding kosher or treif," you would have said        14:36:46

22   kosher?                                                  14:36:49

VIDEOTAPED DEPOSITION OF MARK A. SIEGEL
CONDUCTED ON THURSDAY, JANUARY 19, 2006

170

| | | |
|---|---|---|
| 1 | Q   And her explanation that you remember was | 14:46:20 |
| 2 | "Oh, my God"? | 14:46:23 |
| 3 | A   Correct. | 14:46:23 |
| 4 | Q   And she was stunned to see the shrimp, | 14:46:24 |
| 5 | right? | 14:46:27 |
| 6 | A   Well, she had told me that it was not true. | 14:46:27 |
| 7 | She didn't believe me, and then she saw that it was | 14:46:29 |
| 8 | true. | 14:46:32 |
| 9 | Q   And when you saw her discover that it was | 14:46:33 |
| 10 | true, did she seem genuinely shocked to you? | 14:46:35 |
| 11 | A   She seemed surprised. | 14:46:38 |
| 12 | Q   Okay. | 14:46:40 |
| 13 | A   She seemed surprised that what I told her | 14:46:41 |
| 14 | was true. | 14:46:44 |
| 15 | Q   Okay.  So you don't believe she did | 14:46:44 |
| 16 | anything willful in putting the shrimp out, do you? | 14:46:46 |
| 17 | MR. LEWIN:  This -- the complaint says | 14:46:51 |
| 18 | "willful disregard." | 14:46:52 |
| 19 | BY MR. SCHWABER: | 14:46:54 |
| 20 | Q   My question is, You don't think she did | 14:46:54 |
| 21 | anything willful in putting the shrimp out, do you? | 14:46:57 |
| 22 | A   I don't -- I don't think she -- she did | 14:46:59 |

VIDEOTAPED DEPOSITION OF MARK A. SIEGEL
CONDUCTED ON THURSDAY, JANUARY 19, 2006

171

1    what she promised me to make sure that my daughter's        14:47:02

2    wedding was perfect.  She told me she was a                14:47:05

3    mashgiach.  She knew -- she knew what to do, that          14:47:11

4    everything would be perfect.  And I don't think she        14:47:12

5    took whatever steps were necessary to ensure that          14:47:14

6    that sushi was, in fact, made up only of kosher            14:47:16

7    products.                                                  14:47:19

8        Q    I -- I understand that you don't think she        14:47:19

9    did what she needed to do to ensure that.  My              14:47:21

10   question's a little different.                             14:47:24

11       A    And that she could have.                          14:47:26

12       Q    I understand.  I understand your testimony        14:47:27

13   on that.  Whether I agree with it or not is                14:47:29

14   immaterial.  I understand what you're saying.  My          14:47:32

15   question is different.  My question is, Do you             14:47:34

16   believe she was intending to honor your wishes?            14:47:37

17       A    I don't believe she deliberately had              14:47:43

18   shellfish, shrimp, eel, and octopus, served.               14:47:48

19       Q    Thank you.  The -- towards the end of 32,         14:47:51

20   it says, "Many guests were prevented from enjoying         14:47:57

21   their meals, and some guests refused to eat entrees        14:48:01

22   at the dinner."  Can you name the -- the guests            14:48:04

VIDEOTAPED DEPOSITION OF MARK A. SIEGEL
CONDUCTED ON THURSDAY, JANUARY 19, 2006

183

1    of that wedding back.  Nothing could stop the                    14:58:22

2    wedding from being ruined, because Ridgewells served             14:58:24

3    non-kosher and dairy food.  The wine, I could always             14:58:27

4    buy more of.  The memory is destroyed.                           14:58:31

5         Q    Have you sought any counseling for the                 14:58:33

6    emotional harm you've suffered as a result of this               14:58:38

7    incident?                                                        14:58:42

8         A    No.                                                    14:58:42

9         Q    Did you consider seeking any?                          14:58:44

10        A    No.                                                    14:58:46

11        Q    Have you ever, at any time, sought                     14:58:49

12   counseling?                                                      14:58:52

13        A    Yes.                                                   14:58:52

14        Q    And when was the last time?                            14:58:53

15        A    It was after my son died.  I saw a                     14:58:54

16   psychiatrist several times after my son died.                    14:58:57

17        Q    And was it for a period of months or years?            14:59:00

18        A    Six weeks.                                             14:59:05

19        Q    Okay.  And was that the only time you've               14:59:08

20   ever --                                                          14:59:10

21        A    Yes.                                                   14:59:11

22        Q    -- sought professional emotional help?                 14:59:11

VIDEOTAPED DEPOSITION OF MARK A. SIEGEL
CONDUCTED ON THURSDAY, JANUARY 19, 2006

188

| | |
|---|---|
| 1      A    I don't -- she has in the past.  I don't -- | 15:03:22 |
| 2   I don't know.  Since they got married, they keep a | 15:03:23 |
| 3   kosher home.  And I don't know what she does. | 15:03:26 |
| 4      Q    Outside the home in the past, has she mixed | 15:03:29 |
| 5   dairy and meat products? | 15:03:31 |
| 6      A    Yes. | 15:03:32 |
| 7      Q    Okay.  And you and your wife, outside your | 15:03:32 |
| 8   home, mix dairy and meat products? | 15:03:35 |
| 9      A    Yes. | 15:03:38 |
| 10      Q    And what about in your home? | 15:03:38 |
| 11      A    Yes. | 15:03:41 |
| 12      Q    Okay.  And you eat shellfish in the home? | 15:03:41 |
| 13      A    I think we may have had some cocktail | 15:03:48 |
| 14   parties where shellfish was served. | 15:03:51 |
| 15      Q    In fact, you've used Ridgewells for prior | 15:03:53 |
| 16   parties at your home, haven't you? | 15:03:56 |
| 17      A    Once at my home. | 15:03:57 |
| 18      Q    That was not a kosher event? | 15:03:59 |
| 19      A    That was not a kosher event.  But as I | 15:04:00 |
| 20   recall, there wasn't any shellfish served.  There | 15:04:03 |
| 21   was shellfish served at another Ridgewells' event | 15:04:06 |
| 22   that my company used them for. | 15:04:09 |

VIDEOTAPED DEPOSITION OF MARK A. SIEGEL
CONDUCTED ON THURSDAY, JANUARY 19, 2006

199

| | | |
|---|---|---|
| 1 | were any other problems with the food.  Is that your | 15:12:34 |
| 2 | testimony? | 15:12:36 |
| 3 | A    I -- at that point, I ran downstairs -- | 15:12:36 |
| 4 | Q    I understand that. | 15:12:39 |
| 5 | A    -- to get Toby Nann. | 15:12:40 |
| 6 | Q    I mean, at any point -- | 15:12:42 |
| 7 | A    No, I didn't eat any -- I didn't eat any of | 15:12:44 |
| 8 | the food in the reception.  I didn't mingle with any | 15:12:46 |
| 9 | of the guests at the reception.  I was -- I didn't | 15:12:49 |
| 10 | have any -- I didn't have a drink at the reception. | 15:12:51 |
| 11 | I didn't act like the father of the bride at the | 15:12:53 |
| 12 | reception. | 15:12:55 |
| 13 | Q    Looking back now, do you believe you | 15:12:56 |
| 14 | overreacted? | 15:13:02 |
| 15 | A    Absolutely not. | 15:13:02 |
| 16 | Q    You think that -- do you have any regrets | 15:13:04 |
| 17 | for not mingling with your guests at the reception? | 15:13:08 |
| 18 | A    I -- I was distraught.  I mean, I -- I | 15:13:11 |
| 19 | regret that I -- that that was taken away from me. | 15:13:14 |
| 20 | I was really looking forward to that -- to that | 15:13:17 |
| 21 | party.  But again, that's one of the things that | 15:13:19 |
| 22 | can't -- can't be recovered. | 15:13:22 |

VIDEOTAPED DEPOSITION OF MARK A. SIEGEL
CONDUCTED ON THURSDAY, JANUARY 19, 2006

221

1    by counsel.)                                          15:39:09

2    BY MR. SCHWABER:                                      15:39:10

3        Q     Is Exhibit 4 the contract at issue in this  15:39:10

4    case?                                                 15:39:14

5        A     As I understood it, yeah.  This is the only 15:39:14

6    signed document, as far as I know.  My wife signed    15:39:17

7    it.                                                   15:39:22

8        Q     Okay.  So that's what you understand to be  15:39:22

9    the contract?                                         15:39:23

10       A     Well, that and all the endless discussions  15:39:25

11   that we had about what should be included here.       15:39:29

12       Q     The only written contract that's -- when    15:39:32

13   there's a written contract being referred to, is it   15:39:35

14   Exhibit 4?                                            15:39:37

15       A     A written contract, yes.                    15:39:39

16       Q     Okay.  And Exhibit 5 is the final invoice   15:39:40

17   you received from Ridgewells that reflects the sushi  15:39:45

18   credit that was provided, correct?                    15:39:50

19       A     Yes.                                        15:39:51

20       Q     And that invoice has not been paid,         15:39:51

21   correct?                                              15:39:53

22       A     The balance of $11,000 has not been paid.   15:39:54



Mr. & Mrs. Mark Siegel
2134 Leroy Place, NW
Washington, DC 20008

Date of Event:       Saturday, April 02, 2005
Location of Event:   Corcoran Gallery of Art
Time of Event:       7:00 PM - 1:00 AM
Number of Guests:    250
Event I.D. Number:   285355
Event Name:          Siegel Wedding Reception

Primary Phone: (202) 223-8490
E-mail:        MSiegel@ncen.com

## SIEGEL WEDDING RECEPTION

### AS YOUR GUESTS LEAVE THE CEREMONY
Waiters To Pass A Selection Of Hors D'oeuvres
Specialty Station Opens

### CROSTINI WITH ROASTED TENDERLOIN
Topped With A Creamy Horseradish Sauce

### CHICKEN SATE
Strips Of Chicken Breast Threaded On Bamboo Skewers Lightly Grilled
Offered With Peanut Dipping Sauce

### STUFFED MUSHROOM CAPS
Filled With A Mixture Of Sauteed Spinach And Sweet Onions
Served Warmed

5525 Dorsey Lane  Bethesda MD  20816
tel 301 652 1515  fax 301 907 3733  www.ridgewells.com


EXHIBIT 4
Mark Siegel
1/19/06



Mr. & Mrs. Mark Siegel
Saturday, April 02, 2005
Event I.D. Number: 285355

## SMOKED SALMON CANAPES
Smoked Norwegian Salmon On Black Bread Garnished With Capers

## HOISIN DUCK CUPS
Oriental Hoisin Duck And Baby Leeks Presented In Delicate Phyllo Cups

## TUNA TARTARE CONES
Piped With Ginger Wasabi Mayonnaise
Served In Ceramic Bowls With Black And White Sesame Seeds

\* \* \* \*

## SUSHI STATION
Your Guests Will Enjoy Both Sushi And California Rolls

## MADE TO ORDER
Assorted Freshly Rolled Sushi, Sashimi And Maki To Include
Yellow Fin Tuna ~ Salmon ~ Crisp Veggie Assortment
Pickled Ginger ~ Wasabi ~ Soy Scallion Sauce

\* \* \* \*

## DELI DELIGHTS
Baskets Brimming With Miniature Finger Rolls
Filled With Pastrami With Deli Mustard
Turkey With Herb Mayonnaise
Corned Beef With Spicy Mustard



Mr. & Mrs. Mark Siegel
Saturday, April 02, 2005
Event I.D. Number: 285355

### SEASONAL FRESH VEGETABLE BASKET
A Mosaic Of Assorted Fresh Vegetables To Include Cucumber Wheels
Carrots, Celery, Broccoli, Cauliflower, Red And Green Pepper Strips
Offered With Ranch Dip

\* \* \* \*

### A DIP INTO THE MEDITERRANEAN
Your Guests Will Enjoy A Variety Of Middle Eastern Delights

### RED PEPPER HUMMUS AND EGGPLANT SALAD
A Savory Dip Made Of Chick Peas, Tahini, Fresh Lemon Juice And Roasted Garlic
Eggplant Salad Made With Grilled Eggplant And Potted Herbs
Accompanied By Pita Triangles

### ARTICHOKE HEARTS
Spring Artichoke Hearts Are Marinated In Tarragon And Lemon

### MIXED HERB SPICE CURED OLIVES
A Rainbow Of Green, Purple, Black And Burgundy Olives

### SALAMI AND SAUSAGE
Served With Crusty Bread Medallions

### COLORFUL ROASTED VEGETABLES
Colorful Display Of Grilled Marinated Vegetables To Included:
Eggplant, Zucchini, Yellow Squash, Tomato, Red And Yellow Peppers
Onion And Carrots



Mr. & Mrs. Mark Siegel
Saturday, April 02, 2005
Event I.D. Number: 285355

\* \* \* \*

## ORIENTAL EXPRESS STATION

### SZECHUAN SESAME BEEF
Tender Beef Marinated In A Light Oriental Sauce

### TERIYAKI CHICKEN STIR FRY
Stir-fried Marinated Chicken Is Tossed With Snow Pea Pods, Sweet Red Peppers
Scallions, Bamboo Shoots And Mushrooms
All Prepared In A Flavorful Oriental Sauce

### PAD THAI NOODLES
Delicate Noodles, Stir-fried With Red Chilis, Crushed Peanuts
Bean Sprouts, Scallions, And Egg

### FRIED RICE
Long Grained Rice Seasoned With Soy And Cilantro
Stir Fried With Julienned Vegetables

### DIM SUM
Steamed Wontons Filled With Julienne Of Oriental Vegetables

\* \* \* \*

## GUESTS INVITED FOR DINNER AND DANCING
In The Grand Ballroom



Mr. & Mrs. Mark Siegel
Saturday, April 02, 2005
Event I.D. Number: 285355

FOR THE MOTZI
A Beautiful Braided Challah Loaf

\* \* \* \*

FIRST COURSE TO BE SERVED PLATED:

TOSSED SALAD OF MIXED GREENS
Assorted Lettuces Of Romaine, Endive, Bibb And Watercress
With Button Mushrooms And Tender Hearts Of Palm
Drizzled With Balsamic Vinaigrette
Served With A Poppy Seed Twist

\* \* \* \*

FRENCH SERVICE OF MAIN COURSE:

DUAL ENTREE
Herb Crusted Salmon Medallion
Seared Beef Tenderloin With Crushed Peppercorns
Served With Bourbon Mushroom Sauce
Wild Mushroom Rissotto
Blue Lake Green Beans Sauteed With Slivered Almonds

GOURMET BREAD BASKETS
Brimming With Hand Made Olive Bread, Toasted Focaccia Rusks
Sliced Peasant And Crusty Sourdough Breads
Served With Margarine



Mr. & Mrs. Mark Siegel
Saturday, April 02, 2005
Event I.D. Number: 285355

\* \* \* \*

FOR A SWEET ENDING

\* \* \* \*

FOR EACH TABLE
Yours Guests Will Enjoy Strawberries Dipped In Chocolate
Petit Fours Fresh Strawberries And Florentine Cookies

REFRESHING RASPBERRY SORBET
Scoops Of Homemade Raspberry Sorbet
Garnished With Fresh Mint

IT'S TIME TO CUT THE CAKE

BEAUTIFULLY DECORATED WEDDING CAKE
Devils Food Cake Iced With Creamy Buttercream
Served On A Pool Of Chocolate Sauce

\* \* \* \*

COFFEE AND TEA SERVICE
Freshly Brewed Decaffeinated Coffee And Assorted Teas
Served With Non Dairy Creamer, Sugar, Equal And Sweet & Low

\* \* \* \*



Mr. & Mrs. Mark Siegel
Saturday, April 02, 2005
Event I.D. Number: 285355

FOR THE BAR
Client To Provide All Alcoholic And Nonalcohlic Beverages
Ridgewells To Provide Lemons, Limes Cocktail Fruits And Ice Cubes



Mr. & Mrs. Mark Siegel
Saturday, April 02, 2005
Event I.D. Number: 285355

**FOOD:**

Menu as described to include only the freshest of ingredients, prepared with
unparalleled care and creativity.

Please note: There are 190 each hors'd to be passed during the cocktail recpetion.
Stations will have a staff person in attendence to replenish the stations up until the
end of the reception time.

The quantities to be adjusted proportionately if the count increases or decreases.

**SETUPS:**

Client to provide all alcoholic and nonalcoholic beverages for the bar and for dinner.
Ridgewells to provide lemons, limes, cocktail fruits and ice cubes.

**EQUIPMENT:**

Each piece is carefully selected from Ridgewells' private inventory to beautifully
enhance your event. Tables, chairs, linens, china, glassware, stemware, silverware, and
appropriate kitchen equipment have been included in this proposal.

**SERVICE PERSONNEL:**

Service personnel will include: 3 Bartenders, 24 French Service Servers, 4 Kitchen
Assistants, 1 Kitchen Supervisor, 2 Pantrys, 1 Server Supervisor, and 2 Warehouse
Driver/pick Ups.

The service time within this proposal is an estimate based on your scheduled event
time, as well as set-up and clean-up. Should there be changes in the time of the
function, or number of guests, additional charges will be reflected in your final invoice

**SALES TAXES:**

All applicable sales taxes will be charged unless customer can present a valid tax



Mr. & Mrs. Mark Siegel
Saturday, April 02, 2005
Event I.D. Number: 285355

exemption certificate for the jurisdiction of the event location. Please forward a copy
of your exemption certificate to your Ridgewells' event designer.

Mr. & Mrs. Mark Siegel
Saturday, April 02, 2005
Event I.D. Number: 285355



## ESTIMATED SUMMARY OF COSTS
### Based on 250 Guests

Ridgewells Charges:

| | | |
|---|---|---|
| Food | $ | 16,621.15 |
| Setups | | 58.80 |
| Equipment | | 12,923.45 |
| Staff | | 11,370.00 |
| Ridgewells Subtotal: | $ | 40,973.40 |

Other Charges:

| | | |
|---|---|---|
| Adjustments & Discounts | | -4,421.43 |
| Taxes Excluding Delivery Charge | | 3,325.65 |
| Grand Total: | $ | 39,877.62 |
| Delivery | | 100.00 |
| Fuel Surcharge | | 15.00 |
| Balance Due: | $ | 39,992.62 |

Requested Deposit Due: Tuesday, December 28, 2004 in the Amount of: $9,500.00
Requested Deposit Due: Tuesday, February 15, 2005 in the Amount of: $9,000.00
Requested Deposit Due: Monday, March 28, 2005 in the Amount of: $9,000.00
Toby Nann
Date Prepared: 12/02/2004

## CONFIRMATION & DEPOSIT:

Please sign this agreement in the space provided below and return it with the amount due indicated above to: Ridgewells, Inc., Attn: Accounting Department. The rates and charges utilized in preparing this estimate are guaranteed upon execution of this agreement, and for 30 days from the date the agreement was prepared. Any changes must be made at least 5 working days prior to your event. These changes will be reflected in your final bill. Payment of an events unpaid balance is required 3 days prior to the date of the event, or guaranteed by credit card. Failure to do so may result in the cancellation of this agreement. You may charge your deposit and any balance due to your VISA, MASTERCARD, DISCOVER, or AMERICAN EXPRESS.

ACCEPTED BY: _Judith S. Sy_____    DATE: _12./3/04._

CARD PREFERENCE: VISA/MASTERCARD/AMEX/DISCOVER (Please Circle One)

Expiration Date: _____    Amount Charged: $ _9,500_

Account Name: _Judith S. Siegel_    Phone: (_202_) _453 5431_

Account Number: _4_____

# invoice

for billing inquiries, please call 301 907 3721



ridgewells

MARK SIEGEL
2134 LEROY PLACE, N.W.
WASHINGTON, DC 20008

| | |
|---|---|
| ACCOUNT# | 514357 |
| INV DATE | 04/06/05 |
| INVOICE # | 285355 |
| SALES PERSON | TN |

amount paid

please detach and return with payment

FUNCTION DATE:    4/2/2005  INVOICE # 285355
EVENT ID:              285355

| | |
|---|---|
| FOOD | $ 17,323.60 |
| KOSHER MEAT | 500.00 |
| SETUPS | 58.80 |
| REGULAR EQUIPMENT | 7,287.97 |
| STAFF | 12,454.68 |

(FULL CREDIT GIVEN FOR SUSHI INCLUDED IN
FOOD COST ABOVE)                                          $ (2,200.00)

## terms

Due on receipt

Please reference invoice number when
submitting payment

Unpaid invoices over thirty (30) days
are subject to a service charge of
1½% per month, plus costs of collection
including reasonable attorney's fees not to
exceed 20%

| | |
|---|---|
| TOTAL | $ 35,425.05 |
| SALES TAX | 3,232.77 |
| DELIVERY | 156.04 |
| DEPOSIT | (27,500.00) |
| BALANCE | $ 11,313.86 |

5525 Dorsey Lane  Bethesda MD  20816
tel. 301 652 1515  fax. 301 986 8735  www.ridgewells.com

EXHIBIT 5
Mark Siegel
1/19/06

# EXHIBIT 2

1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

--------------------------------x     ORIGINAL

MARK A. SIEGEL, et al.,                *

    Plaintiffs                      *     Case No.

    v.                              *     1:05CV01717

RIDGEWELLS, INC.,                      *

    Defendant/Counter-Plaintiff *

--------------------------------x


Videotaped Deposition of JUDITH SIEGEL,

in her individual capacity


Washington, D.C.


Tuesday, March 21, 2006

9:41 a.m.

Job No.:   1-72961

Pages:   1 - 146

Reported by:   Vicky J. Stallsworth, RMR, CRR



L.A.D.
REPORTING &
DIGITAL VIDEOGRAPHY

1100 Connecticut Avenue, NW • Suite 850, Washington, D.C. 20036
Tel: 202.861.3410 • 800.292.4789 • Fax: 202.861.3425
Web: ladreporting.com • E-mail: lisa@ladreporting.com
Additional Offices: Rockville, MD • Baltimore, MD • Greenbelt, MD • McLean, VA

VIDEOTAPED DEPOSITION OF JUDITH SIEGEL
CONDUCTED ON TUESDAY, MARCH 21, 2006

144

1    CERTIFICATE OF SHORTHAND REPORTER - NOTARY PUBLIC

2        I, Vicky J. Stallsworth, Registered Merit

3    Reporter, Certified Realtime Reporter, the officer

4    before whom the foregoing proceedings were taken,

5    do hereby certify that the foregoing transcript is

6    a true and correct record of the proceedings; that

7    said proceedings were taken by me stenographically

8    and thereafter reduced to typewriting under my

9    supervision; and that I am neither counsel for,

10   related to, nor employed by any of the parties to

11   this case and have no interest, financial or

12   otherwise, in its outcome.

13       IN WITNESS WHEREOF, I have hereunto set my

14   hand and affixed my notarial seal this 2nd day of

15   April, 2006.

16

17   My commission expires:

18   August 14, 2007

19

20   _Vicky J. Stallsworth_

21   NOTARY PUBLIC IN AND FOR THE

22   DISTRICT OF COLUMBIA

VIDEOTAPED DEPOSITION OF JUDITH SIEGEL
CONDUCTED ON TUESDAY, MARCH 21, 2006

57

1    dealing with Ridgewells, which I thought was a

2    reputable company.  And I was dealing with the

3    kosher division.

4              Not only had the Corcoran recommended

5    Ridgewells as a kosher caterer, but it was on a

6    listing from my synagogue as one of the acceptable

7    kosher caterers.

8              I met with Toby specifically to talk

9    about our kosher needs.  The fact that it would be

10   kosher was a given because I was dealing with what

11   had been presented as the kosher division.

12       Q     My question had to do with -- it was a

13   simpler question than that.  I think it calls for

14   a yes or no.

15             Do you recall that the contract that

16   you reviewed before it was signed didn't mention

17   either kosher or kosher division anywhere on it?

18       A     I have noticed that since, yes.

19       Q     Okay.  But that didn't concern you at

20   the time?

21             MR. LEWIN:  Objection to the word

22   "concern".

VIDEOTAPED DEPOSITION OF JUDITH SIEGEL
CONDUCTED ON TUESDAY, MARCH 21, 2006

95

1    the sushi.  She said, look at the sushi.  And I

2    looked at it and I saw stuff that was white and

3    pink.  And I thought it was that stuff that you

4    buy in the super mat -- market.  I call it fake

5    crab meat.  It's made out of haddock or something

6    like that.  I don't know whether it has a "K" on

7    it or not.  But it's made only with acceptable

8    kosher fish.  And my mother used to make something

9    called mock shrimp out of flounder.  I said, no,

10   no, that's -- that's mock shrimp, that, you know,

11   it's kosher, the sushi is kosher.

12          And she said, well, then -- she said,

13   will you taste it?  I don't know why she said

14   taste it.  But she said, taste it.  Which was not

15   a problem for me because I eat shellfish.

16          And I tasted it.  And I said, oh my

17   God, it is shrimp.  And somehow Mark was nearby, I

18   think.  I know I said -- I got to Mark.  But I

19   think he was nearby because people were still

20   coming upstairs.  It wasn't that crowded yet.  And

21   I go, Mark, there's shrimp in the sushi tray.  I

22   said, come look at this.  And he -- I can picture

VIDEOTAPED DEPOSITION OF JUDITH SIEGEL
CONDUCTED ON TUESDAY, MARCH 21, 2006

104

1  Ridgewells did not do.

2          And as I was having this -- Julie

3  was -- was a civil person who I think, compared

4  with Toby and certainly compared with what I heard

5  about Ridgewells afterward, was respectful to us

6  about what had happened.

7          One of the things that makes me very

8  upset about all this is the disrespect that

9  Ridgewells showed us about this mistake they had

10 made.  And at that point, when I was standing with

11 Julie, our rabbi happened to be passed by.  I

12 don't know whether he had been to the restroom or

13 what.

14          So I didn't -- I neither sought him

15 out nor, you know, I just told him.  I told him

16 because he is someone who is close to me.

17      Q      Fair enough.  On the night of the

18 wedding, after the problem first arose --

19      A      Right.

20      Q      -- did you confront both Julie and

21 Toby or did you limit your communications to Julie

22 that night, about this problem?

VIDEOTAPED DEPOSITION OF JUDITH SIEGEL
CONDUCTED ON TUESDAY, MARCH 21, 2006

129

1   think that that's a proper question.  I'm going to

2   instruct her not to answer.

3   BY MR. SCHWABER:

4        Q     I'm not asking you that.  So let me

5   clarify my question.  I'm asking about your

6   emotional state, your personal feelings, not

7   whether a release would have been signed or

8   anything legal.

9             I'm asking you if anything short of

10  what was communicated to my client by your

11  attorney would have satisfied you?

12       A     At that -- personally, I'm one of four

13  people.

14       Q     Right.

15       A     Personally, something short of -- some

16  of the things short, not the apology part, but

17  some of the things short of that letter probably

18  would have satisfied me.  But we were much further

19  along, given that Ridgewells was so dismissive.

20       Q     Okay.  Have you ever seen any --

21  sought any therapy or counseling or medication as

22  a result of the wedding incident?

VIDEOTAPED DEPOSITION OF JUDITH SIEGEL
CONDUCTED ON TUESDAY, MARCH 21, 2006

130

1      A      No.

2      Q      Have you ever considered it?

3      A      No.

4      Q      Do you believe you need it?

5      A      No.

6      Q      Okay.  You had some concerns about

7  Toby Nann's general capabilities prior to the

8  night of the wedding, correct?

9      A      No.  I personally?  No.  My kids did.

10  But I -- my dealings with her seemed okay.

11  Obviously after the wedding, I have profound

12  questions about her capabilities.  But before

13  that, my dealings with her were okay.

14      Q      How long have you known the Lewins?

15      A      Since about the time the letter was --

16  well, I didn't -- I hadn't met you then, I think

17  Mark --

18      Q      Is your first -- your first

19  interaction with the Lewins in the context of this

20  litigation?

21      A      Yes.

22      Q      Okay.  Let me just, in our last

# EXHIBIT 3

1

1      IN THE UNITED STATES DISTRICT COURT

2         FOR THE DISTRICT OF COLUMBIA

3    ----------------------------------------x

4    MARK A. SIEGEL, et al.                    :

5            Plaintiffs,                       :

6    V.                              : Case No.

7    RIDGEWELLS, INC.,               : 1:05CV01717

8        Defendant/Counter-Plaintiff   :

9    ----------------------------------------x

10         Videotaped Deposition of MICHAEL BERENBAUM

11              Washington, D.C.

12           Thursday, June 29, 2006

13               10:33 a.m.

14                                    ORIGINAL

15

16

17

18

19

20    Job No.:  1-81647

21    Pages 1 - 119

22    Reported By:  Kathy Savich, RPR


L.A.D.
REPORTING &
DIGITAL VIDEOGRAPHY

1100 Connecticut Avenue, NW • Suite 850, Washington, D.C. 20036
Tel: 202.861.3410 • 800.292.4789 • Fax: 202.861.3425
Web: ladreporting.com • E-mail: lisa@ladreporting.com
Additional Offices: Rockville, MD • Baltimore, MD • Greenbelt, MD • McLean, VA

1

2

3                    REPORTER'S CERTIFICATE

4

5           I, Kathy Savich, the undersigned

6   Registered Professional Reporter, do hereby

7   certify that the above-named witness, after having

8   been first duly sworn to testify to the truth, did

9   testify as set forth in the foregoing pages, that

10  the testimony was reported by me in stenotype and

11  transcribed under my personal direction and

12  supervision, and is a true and correct transcript.

13          I further certify that I am not of

14  counsel, not related to counsel or the parties

15  hereto, and not in any way interested in the

16  outcome of this matter.

17          SUBSCRIBED AND SWORN TO under my hand.

18

19

20          Kathy Savich

20          Registered Professional Reporter

21          (#041852)

22          Expiration:  12/31/06

VIDEOTAPED DEPOSITION OF MICHAEL BERENBAUM
CONDUCTED ON THURSDAY, JUNE 29, 2006

22

| 1 | Q. Okay. And if the answer had been it's not a | 10:52:40 |
| 2 | kosher function, you would have simply worked out some | 10:52:42 |
| 3 | accommodation to allow you to eat something? | 10:52:45 |
| 4 | A. It is clear to me that accommodations would | 10:52:48 |
| 5 | have been made to provide that I could eat at the | 10:52:48 |
| 6 | wedding. | 10:52:51 |
| 7 | Q. And that's clear to you from your | 10:52:54 |
| 8 | relationship with the Siegels? | 10:52:55 |
| 9 | A. Absolutely. | 10:52:57 |
| 10 | Q. Okay. I know you told me you don't recall | 10:53:00 |
| 11 | precisely when you asked the question, but do you | 10:53:01 |
| 12 | recall who you asked it of? | 10:53:02 |
| 13 | A. No, I do not. | 10:53:06 |
| 14 | Q. Is it fair for me to assume that it would | 10:53:08 |
| 15 | have either been of Mark or of Judy? | 10:53:11 |
| 16 | A. It was clearly of Mark or of Judy. It was | 10:53:15 |
| 17 | not of Rebecca, it is not of Craig, and it wasn't of | 10:53:18 |
| 18 | any of the other Siegel children. | 10:53:21 |
| 19 | Q. Okay. And did you ever at any point | 10:53:24 |
| 20 | interact directly with Ridgewells or with any of the | 10:53:27 |
| 21 | people at the Corcoran involved with this function | |
| 22 | about what the food was? | |

VIDEOTAPED DEPOSITION OF MICHAEL BERENBAUM
CONDUCTED ON THURSDAY, JUNE 29, 2006

30

1    I empathize with it.  My question is more to the --          11:01:25

2          A.  I'm not trying to -- I'm not trying to give        11:01:26

3    you -- I'm trying to give you context.                       11:01:31

4          Q.  No, I appreciate that.  What I'm getting at        11:01:33

5    is more specific, though.                                    11:01:35

6              In the context of your personal comfort            11:01:43

7    level with the kashrut, k-a-s-h-r-u-t, of the impending      11:01:48

8    function, after you heard yes to the question, "Is it        11:01:50

9    kosher," at a time where you knew that Corcoran doesn't      11:01:55

10   have a kosher facility, am I correct in assuming that,       11:01:58

11   notwithstanding that knowledge, you never inquired as        11:02:01

12   to, "Well, what caterer is coming in?"                       11:02:02

13         A.  I never inquired.                                  11:02:05

14         Q.  Okay.  And can I take it that you presumed         11:02:08

15   that it was going to be a strictly kosher caterer?           11:02:12

16         A.  I presumed that the food that would be             11:02:15

17   served would be kosher because I was told that.              11:02:27

18         Q.  Okay.  Do you -- what is your understanding        11:02:31

19   of what it is you've sued Ridgewells for?  And when I        11:02:41

20   say "you," I'm speaking about you, Michael Berenbaum.        11:02:43

21         A.  My understanding is, very simply, that I was       

22   told that it was going to be a kosher event, that I had

VIDEOTAPED DEPOSITION OF MICHAEL BERENBAUM
CONDUCTED ON THURSDAY, JUNE 29, 2006

32

1    sushi.  I was also, at that point, on the Atkins diet,    11:04:34

2    in which I was eating protein.  So my concern at the    11:04:37

3    sushi bar, when I thought it was kosher, it was    11:04:40

4    essentially to avoid rice and to fill up on protein    11:04:44

5    because I was eating no -- no carbohydrates.    11:04:49

6         Q.   You said you saw some fish at the sushi bar    11:04:49

7    that you were unfamiliar with.    11:04:51

8         A.   (Nods.)    11:04:53

9         Q.   Can I presume you didn't eat any of that?    11:04:56

10        A.   The stuff that I was unfamiliar with, yes.    11:04:59

11   That's the moment at which I knew that something was    11:04:59

12   wrong.    11:05:03

13        Q.   All right.  So at that point where you knew    11:05:06

14   something was wrong, are you saying you knew that    11:05:09

15   before you heard from anybody that something was wrong?    11:05:17

16        A.   The sequence of the events I cannot be    11:05:21

17   precise about.  At that point, if I recall, I said to    11:05:30

18   my wife, who was with me, you know, "Something is not    11:05:32

19   kosher here," or words to that effect.    11:05:40

20        Q.   Okay.  You told me also about seeing foods    11:05:45

21   that you did recognize as shrimp or crab, but you, to

22   paraphrase, presumed at the time you saw them that they

VIDEOTAPED DEPOSITION OF MICHAEL BERENBAUM
CONDUCTED ON THURSDAY, JUNE 29, 2006

35

1    a nondairy imitation that you saw at the Siegel          11:08:42

2    wedding, did you eat any of it?                          11:08:42

3          A.  No.                                            11:08:43

4          Q.  Okay.  Getting back to the --                  11:08:45

5          A.  I had nothing to put it on.                    11:08:49

6          Q.  Because of your Atkins diet?                   11:08:53

7          A.  Because of my Atkins diet.                     11:08:56

8          Q.  Getting back to the crab and shrimp, do you    11:08:59

9    recall seeing products that looked like both, crab and   11:08:59

10   shrimp?                                                  11:09:01

11         A.  I recall seeing something that looked like     11:09:04

12   shrimp.  I do not recall seeing something that looked    11:09:04

13   like crab.                                               11:09:05

14         Q.  Okay.  And when you say --                     11:09:09

15         A.  That's not to say it wasn't there.  I just     11:09:10

16   don't recall it.                                         11:09:13

17         Q.  When you say "something that looks like        11:09:15

18   shrimp," I don't think I specifically asked you this     11:09:15

19   question, so let me just ask you, to be clear, you keep  11:09:17

20   a kosher diet, correct?                                  11:09:18

21         A.  I keep a kosher diet.

22         Q.  Both in and out of your house?

VIDEOTAPED DEPOSITION OF MICHAEL BERENBAUM
CONDUCTED ON THURSDAY, JUNE 29, 2006

36

1      A.  Both in and out of my home.                    11:09:27

2      Q.  And so shrimp is not one of those products    11:09:30

3  you don't know what it looks like, even though you     11:09:31

4  don't eat it, correct?                                 11:09:34

5      A.  Shrimp is not one of those products I do not   11:09:37

6  know what it looks like even though I do not eat       11:09:37

7  shrimp.                                                11:09:39

8      Q.  So when you saw the shrimp, or whatever it     11:09:41

9  was, did you eat any of it?                            11:09:46

10      A.  Not that I recall.                            11:09:49

11      Q.  Okay.  Is it fair to say that you wouldn't    11:09:56

12  knowingly have eaten any if it looked like shrimp at  11:09:58

13  that wedding?                                         11:10:08

14      A.  I can't -- I can't give you an answer,        11:10:18

15  because I can answer it yes and I can answer it no.   11:10:20

16  You know, it's not what my first choice would have    11:10:20

17  been.                                                 11:10:22

18      Q.  Okay.  And you don't recall eating any?       11:10:25

19      A.  I don't recall specifically eating it.        11:10:26

20      Q.  And what about crab?                          11:10:27

21      A.  I don't know that crab was there.

22      Q.  Okay.  So is it fair to say you don't recall

VIDEOTAPED DEPOSITION OF MICHAEL BERENBAUM
CONDUCTED ON THURSDAY, JUNE 29, 2006

38

1      A.   I don't know.                                11:12:28

2      Q.   Meaning you can't affirmatively state you    11:12:29

3  ate unkosher food?                                    11:12:35

4      A.   I cannot affirmatively state I ate unkosher  11:12:35

5  food.                                                 11:12:45

6      Q.   Thank you.  Did you eat the meat?            11:12:49

7      A.   I ate -- yeah.  I ate the meat before the -- 11:12:56

8  I ate meat as soon as we came up to the hors d'oeuvres. 11:12:59

9  There was -- the wedding, essentially after the wedding 11:13:03

10 was over, there were hors d'oeuvres served before the  11:13:07

11 call for dinner.  I went to the meat -- to where they  11:13:12

12 were serving meat.  I did eat meat, and I ceased to eat 11:13:15

13 meat once I saw that the event was not kosher.         11:13:17

14     Q.   And when you say, "once you saw the event    11:13:20

15 was not kosher," that would have been based on your    11:13:25

16 observation of the what I'll call foreign fish and/or  11:13:26

17 based on some communication with somebody?             11:13:30

18     A.   Based on the observation of foreign fish,    11:13:34

19 and then based on communication; and that is, that     11:13:40

20 there came a point in the evening during the           11:13:47

21 hors d'oeuvres when I became aware of there being a

22 pale over the wedding because of the service of these

VIDEOTAPED DEPOSITION OF MICHAEL BERENBAUM
CONDUCTED ON THURSDAY, JUNE 29, 2006

46

1    unkosher pots and pans?                                    11:23:05

2        A.  Yes.                                               11:23:23

3        Q.  Okay.  Did you say that at some point -- I         11:23:27

4    think you said this.  Let me just refresh myself.  Did     11:23:30

5    you say that at some point prior to your filing the        11:23:34

6    lawsuit against my client, you learned that, indeed,       11:23:38

7    kosher meat was cooked in nonkosher facilities?            11:23:39

8        A.  Yeah.                                              11:23:41

9        Q.  And who did you learn that from?                   11:23:46

10       A.  I can't recall specifically who I learned it       11:23:50

11   from.  Obviously, I mean, we can speculate that I          11:23:54

12   learned it from one of the Siegels, because I've had no    11:23:55

13   conversations with Ridgewell.                              11:24:02

14       Q.  So it would have been Mark or Judy; you just       11:24:03

15   don't remember which?                                      11:24:05

16       A.  I don't remember which, and I don't remember       11:24:05

17   when.                                                      11:24:07

18       Q.  Okay.  In what context did you learn it?          11:24:10

19       A.  By the way, it's also possible that I             11:24:10

20   learned it in a newspaper article.                         11:24:11

21       Q.  Okay.

22       A.  So I don't -- you know, there was an article

VIDEOTAPED DEPOSITION OF MICHAEL BERENBAUM
CONDUCTED ON THURSDAY, JUNE 29, 2006

52

1    Q.   Okay.  And you're not here saying Ridgewells    11:30:53

2    committed that violation, correct?    11:30:56

3    A.   I have not been party to the contract.  I    11:31:00

4    can't say what they did or did not violate.  I have not    11:31:02

5    read the contract, seen the contract.    11:31:07

6    Q.   Now, if the contract didn't call for that,    11:31:11

7    but specifically allowed for the absence of kosher    11:31:15

8    supervision and for the cooking of the otherwise kosher    11:31:23

9    meat in an unkosher facility --    11:31:27

10    MS. LEWIN:   Objection.  Are you suggesting    11:31:30

11    that the contract specifically provided that, is that    11:31:33

12    what you're saying, provided for the --    11:31:33

13    MR. SCHWABER:   I hadn't finished my    11:31:35

14    question.  My question, I think I used the word    11:31:37

15    allowed.    11:31:37

16    BY MR. SCHWABER:    11:31:43

17    Q.   If the contractual undertaking between    11:31:46

18    Ridgewells and the Siegels allowed for the right of    11:31:50

19    Ridgewells to cook the food in unkosher facilities and    11:32:03

20    serve it in an unkosher facility, given what the    11:32:14

21    Siegels know about you and your particular standards of

22    kashrut, do you feel they should have communicated that

VIDEOTAPED DEPOSITION OF MICHAEL BERENBAUM
CONDUCTED ON THURSDAY, JUNE 29, 2006

59

1     Q.  So what you're describing to me in answer to          11:41:45

2   my question is, from your general knowledge of some of     11:41:46

3   the attendees at this wedding, that gave you comfort       11:41:49

4   that this must be a kosher affair if they're eating at     11:41:49

5   it?                                                         11:41:50

6           A.  That's right.                                  11:41:54

7           Q.  Okay.  But I'm talking -- I appreciate the     11:41:56

8   answer.  What I'm talking about specifically is            11:42:02

9   representations made to you.  The only representation      11:42:02

10  upon which you --                                          11:42:03

11          A.  The only representation --                     11:42:03

12          Q.  Let me just finish my question.                11:42:06

13          A.  -- made to me was by the Siegels, yes.          11:42:08

14          Q.  Okay.  And so the only representation you       11:42:11

15  relied upon at any point would have been from either       11:42:13

16  Mark or Judy Siegel?                                        11:42:13

17          A.  That's correct.                                11:42:16

18          Q.  Ridgewells never made any representation to     11:42:19

19  you?                                                        11:42:19

20          A.  None.                                           11:42:40

21          Q.  You definitely did not eat any eel or

22  octopus, correct?

VIDEOTAPED DEPOSITION OF MICHAEL BERENBAUM
CONDUCTED ON THURSDAY, JUNE 29, 2006

68

1      A.   Which is, you know, I should have inquired      11:53:07

2  further, perhaps.                                        11:53:16

3      Q.   Have you ever dealt with anyone at             11:53:19

4  Ridgewells in the course of your professional life?     11:53:20

5      A.   Not that I recall.                              11:53:25

6      Q.   Do you have any reason to believe Ridgewells   11:53:30

7  acted maliciously?  And by that I'll define malicious    11:53:38

8  as with ill will, actual malice, intent to harm, in      11:53:39

9  this case.                                               11:53:42

10     A.   Look, I can't ascertain motives of any of      11:53:46

11 the contractual parties.  Since I do not -- Ridgewell    11:53:50

12 is a corporation, my sense of malicious and intent to    11:53:52

13 harm and whatever have you is behavior of an             11:53:56

14 individual, except when it's corporate, you know,        11:54:02

15 practice.  I do think that there was incompetence        11:54:06

16 there, but -- high measure of incompetence, which was    11:54:07

17 irresponsible.                                           11:54:09

18     Q.   And that's based on what others told you was   11:54:11

19 the arrangement with Ridgewells?                         11:54:15

20     A.   It's also based on the fact that if you're     11:54:18

21 having an event like this, you don't put that stuff on

22 sushi, and you ascertain what's going to be the content

# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

MARK A. SIEGEL, *et al.*,

     Plaintiffs,

v.

     Case No. 1:05CV01717
     Judge: John Garrett Penn

RIDGEWELL'S, INC.,

     Defendant/Counter-Plaintiff.

## PLAINTIFF MICHAEL BERENBAUM'S ANSWERS TO
## DEFENDANT'S FIRST SET OF INTERROGATORIES

TO:     RIDGEWELL'S, INC.
     c/o Jeffrey M. Schwaber (D.C. Bar No. 419681)
     Ivonne C. Lindley (D.C. Bar No. 485577)
     Stein, Sperling, Bennett, De Jong, Driscoll & Greenfeig, P.C.
     25 West Middle Lane
     Rockville, MD  20850

FROM:     MICHAEL BERENBAUM
     c/o Nathan Lewin (D.C. Bar No. 38299)
     Alyza D. Lewin (D.C. Bar No. 445506)
     Lewin & Lewin, LLP
     1828 L Street, N.W., Suite 901
     Washington, DC 20036

## INTERROGATORIES

## INTERROGATORY NO. 1:

State your full name, home and business address, marital status, date of birth,

social security number, age, any other names by which you have been known, current

occupation, and names and ages of children.

<u>ANSWER TO INTERROGATORY NO. 3</u>:

     **I don't recall.**


<u>INTERROGATORY NO. 4</u>:

     Please state whether you ate any sushi at Siegel Wedding Reception, and, if so, identify the type of fish that was in the sushi you ate.


<u>ANSWER TO INTERROGATORY NO. 4</u>:

     **I did until I noticed fish that appeared to be prohibited on the sushi plate and then I ceased.**


<u>INTERROGATORY NO. 5</u>:

     Please state whether you ate any dairy products, including cream cheese, at the Siegel Wedding Reception and describe with particularity the basis for your statement.


<u>ANSWER TO INTERROGATORY NO. 5</u>:

     **No.**


<u>INTERROGATORY NO. 6</u>:

     Precisely state each and every fact that supports or relates to your allegation that Defendant served sushi at the Siegel Wedding Reception that contained octopus and eel as stated in the Complaint ¶26 and please identify the source of that information.

INTERROGATORY NO. 13:

Precisely state each and every fact that supports or relates to your allegation made in ¶56 of the Complaint that you were a victim of a "physical impact and incurred harm that is serious and verifiable," and describe with particularity the harm that you allege is "serious" and "verifiable".

ANSWER TO INTERROGATORY NO. 13:

Paragraph 56 does not say that I personally was the victim of a "physical impact." Guests who keep kosher and unwittingly ate shrimp, octopus or eel, or ate cream cheese with meat hors d'oeuvres were subject to "serious and verifiable" harm.

INTERROGATORY NO. 14:

Describe with particularity the "severe emotional injury" you allege you suffered as a result of the Defendant's alleged conduct, including stating any expenses you have incurred for treatment of any such severe emotional injury.

ANSWER TO INTERROGATORY NO. 14:

Eating non-kosher food violates my religious requirements, my obligations to God and to tradition. I do not eat non-kosher foods at any occasion. I felt uncomfortable and deceived.

<u>ANSWER TO INTERROGATORY NO. 24</u>:

Our damage claim is detailed in the expert reports.

Dated: June 8, 2006

Michael Berenbaum

Dated:

NATHAN LEWIN (D.C. Bar No. 38299)
ALYZA D. LEWIN (D.C. Bar No. 445506)
**LEWIN & LEWIN, LLP**
1828 L Street, N.W., Suite 901
Washington, D.C. 20036
(202) 828-1000

*Attorneys for Plaintiffs*

# EXHIBIT 4

1

```
 1              IN THE UNITED STATES DISTRICT COURT

 2               FOR THE DISTRICT OF COLUMBIA

 3

 4   MARK A. SIEGEL, et al.,           ) ORIGINAL

 5          Plaintiffs,               )

 6   vs.                              ) Case No.

 7   RIDGEWELLS, INC.,                ) 1:05CV01717

 8          Defendant/Counter-Plaintiff ) Pages 1-174

 9              -     -     -     -     -

10          VIDEOTAPED DEPOSITION OF CRAIG BARON

11                    WASHINGTON, D.C.

12                    FEBRUARY 7, 2006

13   The videotaped deposition of CRAIG BARON was

14   convened on Tuesday, February 7, 2006,

15   commencing at 9:43 a.m., at the offices of Wiley

16   Rein & Fielding, 1776 K Street, Northwest,

17   Washington, D.C. 20006, before Paula G. Satkin,

18   Registered Professional Reporter and Notary

19   Public.

20   Job No. 1-70183

21              -     -     -     -     -

22
```



L.A.D.
REPORTING &
DIGITAL VIDEOGRAPHY

1100 Connecticut Avenue, NW • Suite 850, Washington, D.C. 20036
Tel: 202.861.3410 • 800.292.4789 • Fax: 202.861.3425
Web: ladreporting.com • E-mail: lisa@ladreporting.com
Additional Offices: Rockville, MD • Baltimore, MD • Greenbelt, MD • McLean, VA

VIDEOTAPED DEPOSITION OF CRAIG BARON
CONDUCTED ON TUESDAY, FEBRUARY 7, 2006

174

1          CERTIFICATE OF NOTARY PUBLIC

2      I, Paula G. Satkin, the officer before whom the

3    foregoing proceedings were taken, do hereby

4    certify that the witness whose testimony appears

5    in the foregoing proceeding was duly sworn by

6    me; that the testimony of said witness was taken

7    by me in stenotype and thereafter reduced to

8    typewriting under my direction; that said

9    proceedings is a true record of the testimony

10   given by said witness; that I am neither counsel

11   for, related to, nor employed by any of the

12   parties to the action in which these proceedings

13   were taken; and, further, that I am not a

14   relative or employee of any attorney or counsel

15   employed by the parties hereto, nor financially

16   or otherwise interested in the outcome of the

17   action.

18   My commission expires August 31, 2010.

19

20   _____

21          PAULA G. SATKIN

     Notary Public in and for the

          District of Columbia

22

VIDEOTAPED DEPOSITION OF CRAIG BARON
CONDUCTED ON TUESDAY, FEBRUARY 7, 2006

22

1      Q.      And you did both?

2      A.      Yes.

3      Q.      Okay.  When you say there were

4    times you ate in the kosher cafeteria, was it

5    purely elective or were there any particular

6    times where you necessarily did it?

7      A.      I would say it was more elective.

8      Q.      Okay.  In the home in which you

9    grew up in Roslyn, was that a kosher home?

10     A.      Yes.

11     Q.      And were your parents in the same

12   house that you grew up in?

13     A.      Yes.

14     Q.      And do they still keep kosher

15   there, too?

16     A.      Yes.

17     Q.      Do you keep kosher now?

18     A.      My wife and I keep a kosher home.

19     Q.      And can I gather from your answer

20   that you do not keep a kosher diet outside the

21   home?

22     A.      You can.

VIDEOTAPED DEPOSITION OF CRAIG BARON
CONDUCTED ON TUESDAY, FEBRUARY 7, 2006

81

1          Q.    Okay.  Do you believe that shrimp

2     was served because a mistake was made?

3                MR. LEWIN:  Objection.

4                THE WITNESS:  I have no -- I have

5     no idea.  A mistake as opposed to what?  I'm not

6     sure.

7     BY MR. SCHWABER:

8          Q.    In other words, you've told me

9     that Toby knew not to serve shrimp, in your

10    opinion; correct?

11         A.    Yes.

12         Q.    So did she serve shrimp

13    maliciously or intentionally, in your opinion?

14               MR. LEWIN:  Objection.

15               THE WITNESS:  I have no way of

16    knowing what her motive was, but if I had to

17    guess I would say she did not do it

18    intentionally.

19    BY MR. SCHWABER:

20         Q.    Okay.  So, in other words, it was

21    a mistake?

22               MR. LEWIN:  Objection.

VIDEOTAPED DEPOSITION OF CRAIG BARON
CONDUCTED ON TUESDAY, FEBRUARY 7, 2006

82

1          THE WITNESS:  Possibly, yes.

2   BY MR. SCHWABER:

3          Q.    To the best of your knowledge was

4   this a mistake, serving shrimp?

5          MR. LEWIN:  Objection.

6          THE WITNESS:  It definitely was a

7   mistake in that we didn't want it, yes.

8   BY MR. SCHWABER:

9          Q.    Okay.  And would it be your

10  belief, recognizing you don't have insight into

11  Toby's brain --

12         A.    Sure.

13         Q.    -- would it be your belief that it

14  was a mistake, not just in that you didn't want

15  it, but that Toby didn't want it?

16         MR. LEWIN:  Objection.

17         THE WITNESS:  Yes, it would be my

18  belief that she did not serve this intentionally

19  and it was a grievous mistake.

20  BY MR. SCHWABER:

21         Q.    Okay.  And how did you come to be

22  aware of the serving of shrimp at your wedding?

VIDEOTAPED DEPOSITION OF CRAIG BARON
CONDUCTED ON TUESDAY, FEBRUARY 7, 2006

160

1    level, but it's not something you can always --

2    you can never get over it completely because

3    it's there.  It's our wedding.

4    BY MR. SCHWABER:

5        Q.    Toby Nann told you that this was

6    an error; right?

7        A.    I --

8        Q.    In other words, she didn't

9    communicate to you I can't believe you're upset

10   about the shellfish, what's wrong with

11   shellfish; right?

12       A.    That's correct.

13       Q.    She communicated to you, sorry

14   there was shellfish?

15       A.    That's correct.

16       Q.    Okay.  And you told me earlier you

17   have no reason to believe she was acting

18   maliciously or intentionally in putting out

19   shellfish?

20       A.    That's correct.

21       Q.    Okay.  And you told me just now

22   you believed her to be sincere when she seemed

VIDEOTAPED DEPOSITION OF CRAIG BARON
CONDUCTED ON TUESDAY, FEBRUARY 7, 2006

161

1    upset about it?

2          A.    I'm sure she was upset about it.

3          Q.    Okay.  Do you believe that this

4    needed to ruin your wedding?

5                MR. LEWIN:  Objection.  Needed to

6    ruin?

7                THE WITNESS:  I don't really know

8    what that means.

9    BY MR. SCHWABER:

10         Q.    What it means is given the way you

11   observe, what you've acknowledged to me is not a

12   strictly kosher observance, given the way your

13   family observes, which you've acknowledged is

14   not a strictly kosher observance in general or

15   even at the wedding, why was this such a big

16   deal to you?

17         A.    Mr. Schwaber, the fact that my

18   family does not have separate dishwashers, does

19   not have a separate kitchen, does not do

20   everything that people who are more religious

21   than they are does not demean the fact that they

22   are not serious about their religion and they

VIDEOTAPED DEPOSITION OF CRAIG BARON
CONDUCTED ON TUESDAY, FEBRUARY 7, 2006

166

1          A.     Yes.

2          Q.     Have you sought or received any

3    treatment as a result of the emotional injury

4    you allege to have suffered as a result of

5    Ridgewells' actions?

6          A.     No.

7          Q.     Have you ever considered it?

8          A.     No.

9          Q.     Do you know that Ridgewells, in

10   addition to the apology you heard from Toby,

11   Ridgewells without precondition credited the

12   full cost of all the sushi at the wedding?  Are

13   you aware of that?

14         A.     I'm aware of that.

15         Q.     Is there anything Ridgewells could

16   do at this point that would bring your families

17   closer together or solve the problems that

18   you've described that you believe resulted from

19   Ridgewells' mistake?

20                MR. LEWIN:  Objection.

21                THE WITNESS:  I don't know what

22   Ridgewells could do at this point.  They've

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARK A. SIEGEL, *et al.*,

    Plaintiffs,

v.

RIDGEWELL'S, INC.,

    Defendant/Counter-Plaintiff.

Case No. 1:05CV01717
Judge: John Garrett Penn

PLAINTIFF CRAIG BARON ANSWERS
TO DEFENDANT'S FIRST SET OF INTERROGATORIES

TO:    RIDGEWELL'S, INC.
    c/o Jeffrey M. Schwaber (D.C. Bar No. 419681)
    Ivonne C. Lindley (D.C. Bar No. 485577)
    Stein, Sperling, Bennett, De Jong, Driscoll & Greenfeig, P.C.
    25 West Middle Lane
    Rockville, MD  20850

FROM:    CRAIG BARON
    c/o Nathan Lewin (D.C. Bar No. 38299)
    Alyza D. Lewin (D.C. Bar No. 445506)
    Lewin & Lewin, LLP
    1828 L Street, N.W., Suite 901
    Washington, DC 20036

**INTERROGATORIES**

INTERROGATORY NO. 1:

Please describe your own history of personal observance, if any, of Jewish

religious dietary laws including both inside and outside of your home, beginning from

age eighteen to the present.

ANSWER TO INTERROGATORY NO. 1:

Craig Baron objects to this Interrogatory because it is designed to be burdensome and harassing since he responded to this question in his deposition. The answer to this Interrogatory is at Deposition of Craig Baron, pp. 19-30. Without waiving this objection, Mr. Baron responds as follows: Since the time of our marriage, Rebecca and I keep a kosher home. We do not keep kosher outside the home.

INTERROGATORY NO. 2:

Please state whether you consumed wine, sushi, and/or cream cheese at the Siegel Wedding Reception, and, if so, describe with particularity what you consumed (i.e. the type of wine, the type of fish that was in the sushi, etc.).

ANSWER TO INTERROGATORY NO. 2:

I consumed wine at the wedding.

INTERROGATORY NO. 3:

Identify every person who you claim consumed shrimp, eel, octopus, or dairy products at the Siegel Wedding Reception, and describe with particularity what each person consumed (i.e. the type of fish that was in the sushi, the type of dairy product, etc.).

TOTAL P.03

ANSWER TO INTERROGATORY NO. 23:

> Our damage claim is detailed in the expert reports we have provided and in our depositions.


Dated:  6/7/06

_____
Craig Baron


Dated:

_____
NATHAN LEWIN (D.C. Bar No. 38299)
ALYZA D. LEWIN (D.C. Bar No. 445506)
**LEWIN & LEWIN, LLP**
1828 L Street, N.W., Suite 901
Washington, D.C.  20036
(202) 828-1000

*Attorneys for Plaintiffs*