DEPOSITION OF RABBI WILLIAM D. RUDOLPH
CONDUCTED ON TUESDAY, AUGUST 8, 2006

1 (Pages 1 to 4)

---

Page 1

```
 1   IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT
 2                    OF COLUMBIA
 3   MARK A. SIEGEL, et al.            :
 4      Plaintiff/Counter-defendants   : Civil Action
 5   v.                                : 05-1717
 6   RIDGEWELL'S, INC.                 :
 7      Defendant/Counter-plaintiff    :
 8   ---------------
 9         Deposition of Rabbi William D. Rudolph
10                    Bethesda, Maryland
11                    Tuesday, August 8, 2006
12                    9:30 a.m.
13
14
15
16
17
18   Job No: 1-84021
19   Pages: 1 through 101
20   Reported by: Patricia G. Koong
21
22
```

Page 2

```
 1         Deposition of Rabbi William D. Rudolph held at:
 2
 3         Congregation Beth El
 4         8215 Old Georgetown Road
 5         Bethesda, Maryland 20814
 6         (301) 652-2606
 7
 8         Pursuant to notice, before Patricia G. Koong,
 9   Certified Court Reporter and Notary Public in and for
10   the State of Maryland.
```

Page 3

```
 1                    APPEARANCES
 2
 3   ON BEHALF OF THE PLAINTIFF, MARK SIEGEL
 4      NATHAN LEWIN, ESQUIRE
 5      Lewin & Lewin, LLP
 6      1828 L. Street N.W.
 7      Suite 901
 8      Washington, D.C. 20036
 9      (202) 828-1000
10
11   ON BEHALF OF DEFENDANT, RIDGEWELL'S
12      JEFFREY SCHWABER, ESQUIRE
13      Stein, Sperling, Bennett, De Jong,
14      Driscoll & Greenfeig, P.C.
15      25 West Middle Lane
16      Rockville, Maryland 20850
17      (301) 340-2020
18
19   Also Present: Alyza D. Lewin, Lewin & Lewin
20                 Moshe Broder, Lewin & Lewin
21
22
```

Page 4

CONTENTS
EXAMINATION OF RABBI WILLIAM RUDOLPH:   PAGE
   By Mr. Lewin                           6
EXHIBITS
(Exhibits attached to the transcript.)

| RUDOLPH DEPOSITION EXHIBITS | PAGE |
|---|---|
| 1  Intention to take Deposition | 10 |
| 2  Cover Letter dated 4/7/06 | 14 |
| 3  Deposition Summary -- Mark Siegel | 14 |
| 4  Ridgewell's Answers to Interrogatories | 15 |
| 5  First Amended Complaint | 15 |
| 6  Curriculum Vitae -- William Rudolph | 22 |
| 7  Page 117 of book | 43 |
| 8  Page of book | 43 |
| 9  Handwritten Notes | 43 |
| 10 Handwritten Notes | 43 |
| 11 Article | 52 |
| 12 Jewish Information & Referral Service Article | 56 |
| 13 Handwritten Notes | 56 |
| 14 Handwritten Notes | 56 |

Page 85

1  Q  What did I misconstrue?
2  A  I don't know. I would have to look at that
3  testimony. I don't have it. I read that on an
4  e-mail, and I didn't have the energy to read through
5  it.
6      THE WITNESS: It was done by a person like
7  you in such a way that there were four words on each
8  page. So it was over a hundred pages.
9      I'll never find it either.
10 BY MR. SCHWABER:
11 Q  Now, on Exhibit 14, second paragraph, you
12 say -- you write, "Kosher style can be anything, a
13 wide variety of definitions."
14 A  Yes. And it's not a label that means
15 anything to people. "Kashrut," there are objective
16 criteria for kashrut -- kosher style, I mean, is
17 really outside of those and is a subset of
18 "non-kosher."
19 Q  So that if a congregant of yours contracted
20 with a caterer and the caterer's own records showed
21 that they were serving a meal that was kosher style,
22 you would say that the congregant could expect shrimp

Page 86

1  to be at that meal?
2  A  No.
3  Q  Why not?
4  A  They wouldn't expect shrimp to be served,
5  although -- although for some Jews it is. They would
6  not expect shrimp to be served.
7  Q  With a kosher-style meal?
8  A  With a kosher-style meal, they would not
9  expect shrimp to be served, that is correct.
10 Q  And why not?
11 A  Because shrimp is clearly outside of the
12 bounds of -- anyone that has any relationship to the
13 word "kosher" would think that shrimp was not
14 something that Jewish people eat, even in a public
15 setting. This is a meal that is -- that involves
16 different people, yeah. I think there's different
17 standards between what people do in their homes and
18 what they're providing for other people.
19 Q  Is shrimp in the same category as pork, for
20 example, in terms of the description of something that
21 is clearly not kosher?
22 A  Yes.

Page 87

1  Q  So that consequently, again, if a caterer
2  was providing a meal that the caterer represented as
3  being kosher style, serving pork would clearly be o
4  of bounds; is that correct?
5  A  Yes.
6  Q  Serving shrimp would clearly be out of
7  bounds?
8  A  Yes.
9  Q  Serving eel would clearly be out of bounds?
10 A  Yes.
11 Q  Serving octopus would clearly be out of
12 bounds?
13 A  Yes.
14 Q  Serving clams would clearly be out of
15 bounds?
16 A  I assume.
17 Q  Serving sea urchins would clearly be out of
18 bounds?
19 A  If you say so.
20 Q  No, I'm asking you.
21 A  I don't know about the sea urchins.
22 Q  Well, I don't know much about it either, but

Page 88

1  I'm just asking you whether from --
2  A  I would guess so.
3  Q  -- what you know about these things, these
4  are foods that are clearly out of bounds?
5  A  I believe so.
6  Q  Just from -- as a consumer, Rabbi Rudolph,
7  are you -- have you eaten sushi?
8  A  Sure.
9  Q  Do you know that sushi contains seafood?
10 A  Seafood?
11 Q  Yes.
12 A  It contains fish.
13 Q  Fish.
14 A  When I hear the word "seafood," I usually
15 think it's something I can't eat.
16 Q  Okay.
17 A  Fish.
18 Q  It contains fish. Do you know it contains
19 fish?
20 A  I do.
21 Q  Do you think it contains meat?
22 A  I do not.