DEPOSITION OF THOMAS KEON
CONDUCTED ON WEDNESDAY, JULY 26, 2006

1 (Pages 1 to 4)

---

**Page 1**

```
 1    IN THE UNITED STATES DISTRICT COURT
 2         FOR THE DISTRICT OF COLUMBIA
 3   -------------------------------x
 4   MARK A. SIEGEL, et al.,        :
 5      Plaintiffs/Counter-Defendant : Civil Action No.
 6      v.                           :   05-1717
 7   RIDGEWELLS, INC.,               : Judge: John
 8      Defendant/Counter-Plaintiff : Garrett Penn
 9   -------------------------------x
10
11           Deposition of THOMAS KEON
12              Washington, D.C.
13            Wednesday, July 26, 2006
14                  2:07 p.m.
15   Job No.: 1-82788
16   Pages 1 - 125
17   Reported by: Alda Mandell, RPR
```

**Page 2**

```
 1      Deposition of THOMAS KEON, held at the
 2   offices of:
 3
 4           COZEN O'CONNOR
 5           1627 I Street, Northwest
 6           Suite 1100
 7           Washington, D.C. 20006
 8           (202) 912-4800
 9
10      Pursuant to agreement, before Alda Mandell,
11   Registered Professional Reporter and Paul Stagnitto,
12   Notary Public of the District of Columbia.
```

**Page 3**

```
 1              APPEARANCES
 2
 3   ON BEHALF OF PLAINTIFFS/COUNTER-DEFENDANTS:
 4      NATHAN LEWIN, ESQUIRE
 5      ALYZA D. LEWIN, ESQUIRE
 6      LEWIN & LEWIN, LLP
 7      1828 L Street, Northwest
 8      Suite 901
 9      Washington, D.C. 20036
10      (202)828-1000
11
12   ON BEHALF OF DEFENDANT/COUNTER-PLAINTIFF:
13      JEFFREY M. SCHWABER, ESQUIRE
14      STEIN, SPERLING, BENNETT, DE JONG,
15      DRISCOLL & GREENFEIG, P.C.
16      25 West Middle Lane
17      Rockville, Maryland 20850
18      (301) 340-2020
19
20   Also Present: PAUL STAGNITTO, Notary Public
21                 MAUREEN SMITH
22                 MOSHE BRODER
```

**Page 4**

```
 1              CONTENTS
 2   EXAMINATION OF THOMAS KEON              PAGE
 3      By Mr. Lewin                 6
 4
 5              EXHIBITS
 6         (Attached to the Transcript)
 7   PLAINTIFFS/COUNTER-DEFENDANTS           PAGE
 8   1  Notice of Deposition             10
 9   2  Key Players - page from Ridgwells web  29
10      site
11   3  Answer to First Amended Complaint    33
12   4  Ridgewells' Answers To Interrogatories 36
13   5  Jewish Information and Referral Service 40
14      two pages from internet
15   6  Page 147 from Washingtonian Magazine   43
16   7  Page 148 from Washingtonian Magazine   44
17   8  Washington Business Journal article    47
18      Ridgewell's entree to '90s survival
19   9  Events Analysis Report - Budget       64
20   10 Siegel Wedding Reception document     69
21      Bates stamped 0091 to 0100
22
```

Page 89

1    A    That they had requested it not to be there.
2    Q    For something other than a religious reason?
3    A    They had asked for specific items to be on
4    the sushi bar and shrimp was not one of them.
5    Q    Yes. I understand that, Mr. Keon. But I'm
6    asking you whether you understood that there was some
7    particular gravity about the fact that there had been
8    an error by putting shrimp on the sushi bar when it
9    had not been requested or was it just simply that
10   there is some additional food that was being placed on
11   the sushi bar?
12   A    Counselor, I don't know whether or not the
13   presence of shrimp on the sushi bar had or had not
14   religious significance for Mark Siegel. What I know
15   is that Mark Siegel had a non kosher wedding and he
16   had requested specific items -- he knew it was non
17   kosher and we inadvertently, through an outside
18   vendor, had shrimp on the sushi bar. That's what I
19   understood through my discussions with Ms. Nann.
20   Q    And through your discussions with Ms. Nann,
21   did you understand that putting shrimp on sushi at a
22   Jewish wedding where there were people who followed

Page 90

1    dietary laws was a serious violation?
2        MR. SCHWABER: Serious violation of what?
3        MR. LEWIN: A serious violation of the
4    religious requirements and of the expectation of the
5    customer at the wedding.
6        MR. SCHWABER: Objection.
7    A    You asked a compound question. The first
8    part religious, no, I don't understand. The second
9    part, because it had not been requested, that I
10   understand.
11   BY MR. LEWIN:
12   Q    But you didn't understand the religious
13   part, although you've told us that you understood that
14   shrimp is clearly not kosher?
15   A    That's right. That's right. Shrimp is not
16   kosher. It would be no different than if somebody had
17   requested no paprika and we had paprika on an item and
18   they would be upset. But there's no religious
19   significance to this.
20   Q    I see. So your testimony today is, Mr.
21   Keon, that putting shrimp on that sushi bar was like
22   putting paprika on food when somebody had requested

Page 91

1    that there be no paprika. That's comparable?
2    A    No. I wouldn't say they're comparable. I
3    would say that as an example, when somebody -- when
4    something is on an item or was not requested and we
5    specifically did that, then I could understand why
6    somebody would be upset. But there are thousands of
7    examples I could give you.
8    Q    I see.
9    A    I just don't like paprika. That's why I
10   used paprika.
11   Q    And that was the full extent of Ridgewells'
12   culpability with regard to this event, was it was
13   comparable to its having put paprika on food when the
14   customer did not want paprika?
15   A    No. I didn't say that. You just said that.
16   Q    No. I'm asking you whether that's the
17   illustration that you use.
18   A    I wouldn't use that illustration.
19   Q    It was your illustration, wasn't it?
20       MR. SCHWABER: Objection. It wasn't his
21   illustration and you just clarified it.
22       (A recess was taken.)

Page 92

1    BY MR. LEWIN:
2    Q    I asked you a little bit about Toby Nann.
3    Do you know when she became an event designer?
4    A    No. Not specifically.
5    Q    But you listed her as one initially of I
6    think -- was it two people who, you know, sort of
7    handles kosher events? Is that right?
8        MR. SCHWABER: The witness mentioned three.
9        MR. LEWIN: Three. Okay.
10   BY MR. LEWIN:
11   Q    So in terms of the kosher events that
12   Ridgewells has, approximately what percentage of those
13   kosher events do you think would be under her
14   direction? I mean she would be the event designer
15   for?
16   A    You know, I couldn't answer that without
17   looking at the events. I really wouldn't know.
18   Q    But is it approximately equally distributed
19   between the three event designers, handling kosher
20   events?
21   A    No. I wouldn't characterize it that way.
22   Depends on the size of the event as well.