instruction given to the sushi vendor was to avoid "pork" – a food that is never found in sushi (Mummert Dep. Tr. 51; Nann Dep. Tr. p. 76-77).

*Third,* the chefs who prepared the *hors d'oeuvres* served at the wedding reception were not told that *only* kosher meat was to be used for their dishes (Keener Dep. Tr. pp. 90-94). It is probable that non-kosher meat was included in various dishes served to guests at the reception (Keener Dep. Tr. pp. 77-81).

There are factual disputes over other alleged violations of the agreed commitment to abide by the requested and agreed-upon standard of *kashrut* and over the extent to which Ms. Nann represented that she understood this standard and promised that the event would be "kosher" within that standard. On these other factual questions, a jury will decide whether to believe the Siegels' sworn version of what Ms. Nann promised them with regard to the food to be served at the reception and dinner or whether to believe Ms. Nann. A jury will also decide whether Ridgewell's violated other commitments regarding the food such as the assurance that there would be no dairy served at the event and that all the meat served would be kosher meat.

For purposes of the present motion for summary judgment at this juncture of the case, we assume *arguendo* that the Siegels were promised only a "kosher-style" reception and dinner. It is undisputed, however, that, as Ridgewell's admitted and Ms. Nann acknowledged in her deposition, "there should be no shrimp" at such an event (Nann Dep. Tr. p. 74). Ridgewell's also acknowledged that no dairy products were to be served at this event. (Def. Answer to First Amended Comp., ¶ 13; Nann. Dep. Tr. p. 85.) It is also undisputed that the sushi station was not "Made To Order" but was contracted out to Sushi USA. These undisputed violations of the agreement between the Siegel's and Ridgewell's – which may have been negligent – impose civil liability on Ridgewell's under the District of Columbia Consumer Protection Procedures

4