# EXHIBIT 1

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARK A. SIEGEL, *et al.,*          ) | |
|                        ) | |
|    *Plaintiffs/ Counter-Defendants,*   ) | |
|                        ) | Civil Action No. 05-1717 (JGP) |
| v.                        ) | |
|                        ) | |
| RIDGEWELL'S, INC.         ) | |
|                        ) | |
|    *Defendant/ Counter-Plaintiff.*   ) | |
|                        ) | |

## PLAINTIFFS' MEMORANDUM OF LAW IN
## SUPPORT OF MOTION FOR SUMMARY JUDGMENT

### STATEMENT OF FACTS

This is a case of a leading Washington, D.C., caterer (Ridgewell's, Inc.) that has been garnering large profits from its advertised capacity to provide food that satisfies Jewish dietary requirements (*kashrut*). Through a representative who was, according to her representations, totally familiar with these requirements, Ridgewell's marketed to a bride's parents its ability to satisfy their requirements for a wedding reception meeting their needed kosher requirements. After the contract was signed and the initial payments were made, Ridgewell's exhibited total disdain for the religious needs of the wedding reception and dinner, and either deliberately or with reckless abandon failed to provide the product it had promised. The undisputed evidence establishes the plaintiffs' right to a judgment on liability under the District of Columbia Consumer Protection Procedures Act, D.C. Code §§ 28-3901 *et seq.*

The bride's parents ("the Siegels") contracted with Ridgewell's for a wedding reception and dinner. It is undisputed that Ridgewell's representative, Ms. Toby Nann, was told that the

In fact, the District of Columbia Court of Appeals has not read such a limitation into the statute. In March 2006, the court said in *Caulfield v. Stark*, 893 A.2d 970, 976 (D.C. 2006) (emphasis original), that "we did not address whether the CPPA also embraces claims of *unintentional* misrepresentation," and the court held that "unintentional misrepresentation under the CPPA is still an open question." 893 A.2d at 977.

At this stage of the proceeding, we cannot allege or prove that Ridgewell's misrepresentation was intentional. The evidence does establish, however, that it was plainly negligent, careless, and reckless. In this respect, the conduct of the defendant in this case was far more culpable than the record-keeping failure of the doctor who was a defendant in *Caulfield v. Stark*. The basis for the jury's and trial judge's determinations in that case was virtually absolute liability for any consequence of inadequate record-keeping. The District of Columbia Court of Appeals reversed a judgment for the plaintiff in *Caulfield* on the ground that "a reasonable juror could only find a 'good faith medical response' to the Caulfield's 'subjective complaints,' not a misrepresentation or omission having a tendency to mislead." 893 A.2d at 979. And the *Caulfield* court observed that the language of the CPPA does not appear to support any distinction between different kinds of misrepresentations. *See* 893 A.2d at 979, n. 11.

Ridgewell's misrepresentations conveyed to consumers an intention on Ridgewell's part to protect against use of non-kosher ingredients – an intention that Ridgewell's totally failed to implement. This is, therefore, not a case of innocent unintentional misrepresentations to which a plaintiff is seeking to impose absolute liability. On the present undisputed record, it is a case of gross negligence and carelessness for which a commercial merchant would be held liable under the provisions of the CPPA.

10

that were not consumed during the evening were found in a secreted hidden location. It was reasonable for Mr. Siegel to infer that Ridgewell's employees were trying to steal his wine.

Finally, the third counter-claim ("Count III") alleges only that Mr. Siegel "caused other consumers in this community to question Ridgewell's abilities to provide Kosher catering service." In light of Mr. Siegel's experience with Ridgewell's, there is substantial reason to question Ridgewell's "abilities" in this respect. Rather than being sued civilly for questioning these "abilities," Mr. Siegel deserves commendation if he has raised questions in this regard.

In any event, the allegation is too general and imprecise to give rise to any civil liability. It should be dismissed.

## CONCLUSION

For the foregoing reasons, summary judgment should be entered for the plaintiffs on the issue of liability and Ridgewell's counterclaims should be dismissed.

Dated: October 30, 2006                    ____/s/ Nathan Lewin_____
                                           NATHAN LEWIN (DC BAR NO. 38299)
                                           ALYZA D. LEWIN (DC BAR NO. 445506)
                                           LEWIN & LEWIN, LLP
                                           1828 L Street, N.W., Suite 901
                                           Washington, D.C. 20036
                                           (202) 828-1000

                                           *Attorneys for the Plaintiffs-Counter-Defendants*

# EXHIBIT 2

1

1    IN THE UNITED STATES DISTRICT COURT

2    FOR THE DISTRICT OF COLUMBIA

3    --------------------------------x

4    MARK A. SIEGEL, et al.,              )    ORIGINAL

5                          Plaintiffs,    )

6        v.                              )  Case No.

7    RIDGEWELLS, INC.,                    )    1:05CV01717

8        Defendant/Counter-Plaintiff    )

9    --------------------------------x

10        Videotaped Deposition of MARK A. SIEGEL

11                    Washington, D.C.

12                Thursday, January 19, 2006

13                        9:36 a.m.

14

15

16

17

18

19

20    Job No.:   1-70181

21    Pages 1 - 226

22    Reported By:   Joan V. Cain


L.A.D.
REPORTING &
DIGITAL VIDEOGRAPHY

1100 Connecticut Avenue, NW • Suite 850, Washington, D.C. 20036
Tel: 202.861.3410 • 800.292.4789 • Fax: 202.861.3425
Web: ladreporting.com • E-mail: lisa@ladreporting.com
Additional Offices: Rockville, MD • Baltimore, MD • Greenbelt, MD • McLean, VA

VIDEOTAPED DEPOSITION OF MARK A. SIEGEL
CONDUCTED ON THURSDAY, JANUARY 19, 2006

170

| | | |
|---|---|---|
| 1 | Q    And her explanation that you remember was | 14:46:20 |
| 2 | "Oh, my God"? | 14:46:23 |
| 3 | A    Correct. | 14:46:23 |
| 4 | Q    And she was stunned to see the shrimp, | 14:46:24 |
| 5 | right? | 14:46:27 |
| 6 | A    Well, she had told me that it was not true. | 14:46:27 |
| 7 | She didn't believe me, and then she saw that it was | 14:46:29 |
| 8 | true. | 14:46:32 |
| 9 | Q    And when you saw her discover that it was | 14:46:33 |
| 10 | true, did she seem genuinely shocked to you? | 14:46:35 |
| 11 | A    She seemed surprised. | 14:46:38 |
| 12 | Q    Okay. | 14:46:40 |
| 13 | A    She seemed surprised that what I told her | 14:46:41 |
| 14 | was true. | 14:46:44 |
| 15 | Q    Okay.  So you don't believe she did | 14:46:44 |
| 16 | anything willful in putting the shrimp out, do you? | 14:46:46 |
| 17 | MR. LEWIN:  This -- the complaint says | 14:46:51 |
| 18 | "willful disregard." | 14:46:52 |
| 19 | BY MR. SCHWABER: | 14:46:54 |
| 20 | Q    My question is, You don't think she did | 14:46:54 |
| 21 | anything willful in putting the shrimp out, do you? | 14:46:57 |
| 22 | A    I don't -- I don't think she -- she did | 14:46:59 |

VIDEOTAPED DEPOSITION OF MARK A. SIEGEL
CONDUCTED ON THURSDAY, JANUARY 19, 2006

171

| | | |
|---|---|---|
| 1 | what she promised me to make sure that my daughter's | 14:47:02 |
| 2 | wedding was perfect.  She told me she was a | 14:47:05 |
| 3 | mashgiach.  She knew -- she knew what to do, that | 14:47:11 |
| 4 | everything would be perfect.  And I don't think she | 14:47:12 |
| 5 | took whatever steps were necessary to ensure that | 14:47:14 |
| 6 | that sushi was, in fact, made up only of kosher | 14:47:16 |
| 7 | products. | 14:47:19 |
| 8 | Q    I -- I understand that you don't think she | 14:47:19 |
| 9 | did what she needed to do to ensure that.  My | 14:47:21 |
| 10 | question's a little different. | 14:47:24 |
| 11 | A    And that she could have. | 14:47:26 |
| 12 | Q    I understand.  I understand your testimony | 14:47:27 |
| 13 | on that.  Whether I agree with it or not is | 14:47:29 |
| 14 | immaterial.  I understand what you're saying.  My | 14:47:32 |
| 15 | question is different.  My question is, Do you | 14:47:34 |
| 16 | believe she was intending to honor your wishes? | 14:47:37 |
| 17 | A    I don't believe she deliberately had | 14:47:43 |
| 18 | shellfish, shrimp, eel, and octopus, served. | 14:47:48 |
| 19 | Q    Thank you.  The -- towards the end of 32, | 14:47:51 |
| 20 | it says, "Many guests were prevented from enjoying | 14:47:57 |
| 21 | their meals, and some guests refused to eat entrees | 14:48:01 |
| 22 | at the dinner."  Can you name the -- the guests | 14:48:04 |

VIDEOTAPED DEPOSITION OF MARK A. SIEGEL
CONDUCTED ON THURSDAY, JANUARY 19, 2006

183

1    of that wedding back.  Nothing could stop the            14:58:22

2    wedding from being ruined, because Ridgewells served     14:58:24

3    non-kosher and dairy food.  The wine, I could always     14:58:27

4    buy more of.  The memory is destroyed.                   14:58:31

5        Q    Have you sought any counseling for the          14:58:33

6    emotional harm you've suffered as a result of this       14:58:38

7    incident?                                                14:58:42

8        A    No.                                             14:58:42

9        Q    Did you consider seeking any?                   14:58:44

10       A    No.                                             14:58:46

11       Q    Have you ever, at any time, sought              14:58:49

12   counseling?                                              14:58:52

13       A    Yes.                                            14:58:52

14       Q    And when was the last time?                     14:58:53

15       A    It was after my son died.  I saw a              14:58:54

16   psychiatrist several times after my son died.           14:58:57

17       Q    And was it for a period of months or years?    14:59:00

18       A    Six weeks.                                      14:59:05

19       Q    Okay.  And was that the only time you've        14:59:08

20   ever --                                                  14:59:10

21       A    Yes.                                            14:59:11

22       Q    -- sought professional emotional help?         14:59:11

1

1          IN THE UNITED STATES DISTRICT COURT

2             FOR THE DISTRICT OF COLUMBIA

3

4   MARK A. SIEGEL, et al.,              ) ORIGINAL

5          Plaintiffs,                   )

6    vs.                                 ) Case No.

7   RIDGEWELLS, INC.,                    ) 1:05CV01717

8          Defendant/Counter-Plaintiff ) Pages 1-174

9              -     -     -     -     -

10        VIDEOTAPED DEPOSITION OF CRAIG BARON

11                  WASHINGTON, D.C.

12                  FEBRUARY 7, 2006

13   The videotaped deposition of CRAIG BARON was

14   convened on Tuesday, February 7, 2006,

15   commencing at 9:43 a.m., at the offices of Wiley

16   Rein & Fielding, 1776 K Street, Northwest,

17   Washington, D.C. 20006, before Paula G. Satkin,

18   Registered Professional Reporter and Notary

19   Public.

20   Job No. 1-70183

21              -     -     -     -     -

22


L.A.D.
REPORTING &
DIGITAL VIDEOGRAPHY

1100 Connecticut Avenue, NW • Suite 850, Washington, D.C. 20036
Tel: 202.861.3410 • 800.292.4789 • Fax: 202.861.3425
Web: ladreporting.com • E-mail: lisa@ladreporting.com
Additional Offices: Rockville, MD • Baltimore, MD • Greenbelt, MD • McLean, VA

VIDEOTAPED DEPOSITION OF CRAIG BARON
CONDUCTED ON TUESDAY, FEBRUARY 7, 2006

81

1          Q.    Okay.  Do you believe that shrimp

2    was served because a mistake was made?

3                MR. LEWIN:  Objection.

4                THE WITNESS:  I have no -- I have

5    no idea.  A mistake as opposed to what?  I'm not

6    sure.

7    BY MR. SCHWABER:

8          Q.    In other words, you've told me

9    that Toby knew not to serve shrimp, in your

10   opinion; correct?

11         A.    Yes.

12         Q.    So did she serve shrimp

13   maliciously or intentionally, in your opinion?

14               MR. LEWIN:  Objection.

15               THE WITNESS:  I have no way of

16   knowing what her motive was, but if I had to

17   guess I would say she did not do it

18   intentionally.

19   BY MR. SCHWABER:

20         Q.    Okay.  So, in other words, it was

21   a mistake?

22               MR. LEWIN:  Objection.

82

1            THE WITNESS:  Possibly, yes.

2    BY MR. SCHWABER:

3        Q.    To the best of your knowledge was

4    this a mistake, serving shrimp?

5            MR. LEWIN:  Objection.

6            THE WITNESS:  It definitely was a

7    mistake in that we didn't want it, yes.

8    BY MR. SCHWABER:

9        Q.    Okay.  And would it be your

10   belief, recognizing you don't have insight into

11   Toby's brain --

12       A.    Sure.

13       Q.    -- would it be your belief that it

14   was a mistake, not just in that you didn't want

15   it, but that Toby didn't want it?

16           MR. LEWIN:  Objection.

17           THE WITNESS:  Yes, it would be my

18   belief that she did not serve this intentionally

19   and it was a grievous mistake.

20   BY MR. SCHWABER:

21       Q.    Okay.  And how did you come to be

22   aware of the serving of shrimp at your wedding?

160

1    level, but it's not something you can always --

2    you can never get over it completely because

3    it's there.  It's our wedding.

4    BY MR. SCHWABER:

5        Q.    Toby Nann told you that this was

6    an error; right?

7        A.    I --

8        Q.    In other words, she didn't

9    communicate to you I can't believe you're upset

10   about the shellfish, what's wrong with

11   shellfish; right?

12       A.    That's correct.

13       Q.    She communicated to you, sorry

14   there was shellfish?

15       A.    That's correct.

16       Q.    Okay.  And you told me earlier you

17   have no reason to believe she was acting

18   maliciously or intentionally in putting out

19   shellfish?

20       A.    That's correct.

21       Q.    Okay.  And you told me just now

22   you believed her to be sincere when she seemed

VIDEOTAPED DEPOSITION OF CRAIG BARON
CONDUCTED ON TUESDAY, FEBRUARY 7, 2006

161

1    upset about it?

2            A.    I'm sure she was upset about it.

3            Q.    Okay.  Do you believe that this

4    needed to ruin your wedding?

5            MR. LEWIN:    Objection.  Needed to

6    ruin?

7            THE WITNESS:    I don't really know

8    what that means.

9    BY MR. SCHWABER:

10           Q.    What it means is given the way you

11   observe, what you've acknowledged to me is not a

12   strictly kosher observance, given the way your

13   family observes, which you've acknowledged is

14   not a strictly kosher observance in general or

15   even at the wedding, why was this such a big

16   deal to you?

17           A.    Mr. Schwaber, the fact that my

18   family does not have separate dishwashers, does

19   not have a separate kitchen, does not do

20   everything that people who are more religious

21   than they are does not demean the fact that they

22   are not serious about their religion and they

VIDEOTAPED DEPOSITION OF CRAIG BARON
CONDUCTED ON TUESDAY, FEBRUARY 7, 2006

166

1          A.     Yes.

2          Q.     Have you sought or received any

3   treatment as a result of the emotional injury

4   you allege to have suffered as a result of

5   Ridgewells' actions?

6          A.     No.

7          Q.     Have you ever considered it?

8          A.     No.

9          Q.     Do you know that Ridgewells, in

10  addition to the apology you heard from Toby,

11  Ridgewells without precondition credited the

12  full cost of all the sushi at the wedding?  Are

13  you aware of that?

14         A.     I'm aware of that.

15         Q.     Is there anything Ridgewells could

16  do at this point that would bring your families

17  closer together or solve the problems that

18  you've described that you believe resulted from

19  Ridgewells' mistake?

20              MR. LEWIN:  Objection.

21              THE WITNESS:  I don't know what

22  Ridgewells could do at this point.  They've

1          IN THE UNITED STATES DISTRICT COURT

2             FOR THE DISTRICT OF COLUMBIA

3

4    - - - - - - - - - - - - - - - - - - - - - -x    ORIGINAL

5    MARK A. SIEGEL, et al.,                    *

6         Plaintiffs                            *      Case No.

7         v.                                    *      1:05CV01717

8    RIDGEWELLS, INC.,                          *

9         Defendant/Counter-Plaintiff *

10   - - - - - - - - - - - - - - - - - - - - - -x

11

12        Videotaped Deposition of JUDITH SIEGEL,

13             in her individual capacity

14

15                  Washington, D.C.

16

17              Tuesday, March 21, 2006

18                    9:41 a.m.

19   Job No.:   1-72961

20   Pages:   1 - 146

21   Reported by:   Vicky J. Stallsworth, RMR, CRR

22


L.A.D.
REPORTING &
DIGITAL VIDEOGRAPHY

1100 Connecticut Avenue, NW • Suite 850, Washington, D.C. 20036
Tel: 202.861.3410 • 800.292.4789 • Fax: 202.861.3425
Web: ladreporting.com • E-mail: lisa@ladreporting.com
Additional Offices: Rockville, MD • Baltimore, MD • Greenbelt, MD • McLean, VA

Case 1:05-cv-01717-RJL    Document 68-2    Filed 12/05/2006    Page 17 of 39
VIDEOTAPED DEPOSITION OF JUDITH SIEGEL
CONDUCTED ON TUESDAY, MARCH 21, 2006

104

1    Ridgewells did not do.

2             And as I was having this -- Julie

3    was -- was a civil person who I think, compared

4    with Toby and certainly compared with what I heard

5    about Ridgewells afterward, was respectful to us

6    about what had happened.

7             One of the things that makes me very

8    upset about all this is the disrespect that

9    Ridgewells showed us about this mistake they had

10   made.  And at that point, when I was standing with

11   Julie, our rabbi happened to be passed by.  I

12   don't know whether he had been to the restroom or

13   what.

14            So I didn't -- I neither sought him

15   out nor, you know, I just told him.  I told him

16   because he is someone who is close to me.

17        Q    Fair enough.  On the night of the

18   wedding, after the problem first arose --

19        A    Right.

20        Q    -- did you confront both Julie and

21   Toby or did you limit your communications to Julie

22   that night, about this problem?

VIDEOTAPED DEPOSITION OF JUDITH SIEGEL
CONDUCTED ON TUESDAY, MARCH 21, 2006

129

1  think that that's a proper question.  I'm going to

2  instruct her not to answer.

3  BY MR. SCHWABER:

4       Q    I'm not asking you that.  So let me

5  clarify my question.  I'm asking about your

6  emotional state, your personal feelings, not

7  whether a release would have been signed or

8  anything legal.

9            I'm asking you if anything short of

10  what was communicated to my client by your

11  attorney would have satisfied you?

12       A    At that -- personally, I'm one of four

13  people.

14       Q    Right.

15       A    Personally, something short of -- some

16  of the things short, not the apology part, but

17  some of the things short of that letter probably

18  would have satisfied me.  But we were much further

19  along, given that Ridgewells was so dismissive.

20       Q    Okay.  Have you ever seen any --

21  sought any therapy or counseling or medication as

22  a result of the wedding incident?

130

1        A        No.

2        Q        Have you ever considered it?

3        A        No.

4        Q        Do you believe you need it?

5        A        No.

6        Q        Okay.  You had some concerns about

7   Toby Nann's general capabilities prior to the

8   night of the wedding, correct?

9        A        No.  I personally?  No.  My kids did.

10  But I -- my dealings with her seemed okay.

11  Obviously after the wedding, I have profound

12  questions about her capabilities.  But before

13  that, my dealings with her were okay.

14       Q        How long have you known the Lewins?

15       A        Since about the time the letter was --

16  well, I didn't -- I hadn't met you then, I think

17  Mark --

18       Q        Is your first -- your first

19  interaction with the Lewins in the context of this

20  litigation?

21       A        Yes.

22       Q        Okay.  Let me just, in our last

1                                                           1

1              IN THE UNITED STATES DISTRICT COURT

2                 FOR THE DISTRICT OF COLUMBIA

3       ----------------------------------------x

4       MARK A. SIEGEL, et al.                    :

5                    Plaintiffs,                  :

6       V.                                        : Case No.

7       RIDGEWELLS, INC.,                         : 1:05CV01717

8                    Defendant/Counter-Plaintiff  :

9       ----------------------------------------x

10           Videotaped Deposition of MICHAEL BERENBAUM

11                    Washington, D.C.

12                 Thursday, June 29, 2006

13                      10:33 a.m.

14                                       ORIGINAL

15

16

17

18

19

20      Job No.:  1-81647

21      Pages 1 - 119

22      Reported By:  Kathy Savich, RPR


L.A.D.
REPORTING &
DIGITAL VIDEOGRAPHY

1100 Connecticut Avenue, NW • Suite 850, Washington, D.C. 20036
Tel: 202.861.3410 • 800.292.4789 • Fax: 202.861.3425
Web: ladreporting.com • E-mail: lisa@ladreporting.com
Additional Offices: Rockville, MD • Baltimore, MD • Greenbelt, MD • McLean, VA

36

1      A.   Both in and out of my home.                    11:09:27

2      Q.   And so shrimp is not one of those products     11:09:30

3  you don't know what it looks like, even though you      11:09:31

4  don't eat it, correct?                                  11:09:34

5      A.   Shrimp is not one of those products I do not   11:09:37

6  know what it looks like even though I do not eat        11:09:37

7  shrimp.                                                 11:09:39

8      Q.   So when you saw the shrimp, or whatever it     11:09:41

9  was, did you eat any of it?                             11:09:46

10     A.   Not that I recall.                             11:09:49

11     Q.   Okay.  Is it fair to say that you wouldn't     11:09:56

12  knowingly have eaten any if it looked like shrimp at   11:09:58

13  that wedding?                                          11:10:08

14     A.   I can't -- I can't give you an answer,         11:10:18

15  because I can answer it yes and I can answer it no.    11:10:20

16  You know, it's not what my first choice would have     11:10:20

17  been.                                                  11:10:22

18     Q.   Okay.  And you don't recall eating any?        11:10:25

19     A.   I don't recall specifically eating it.        11:10:26

20     Q.   And what about crab?                           11:10:27

21     A.   I don't know that crab was there.

22     Q.   Okay.  So is it fair to say you don't recall

38

| | | |
|---|---|---|
| 1 | A. I don't know. | 11:12:28 |
| 2 | Q. Meaning you can't affirmatively state you | 11:12:29 |
| 3 | ate unkosher food? | 11:12:35 |
| 4 | A. I cannot affirmatively state I ate unkosher | 11:12:35 |
| 5 | food. | 11:12:45 |
| 6 | Q. Thank you. Did you eat the meat? | 11:12:49 |
| 7 | A. I ate -- yeah. I ate the meat before the -- | 11:12:56 |
| 8 | I ate meat as soon as we came up to the hors d'oeuvres. | 11:12:59 |
| 9 | There was -- the wedding, essentially after the wedding | 11:13:03 |
| 10 | was over, there were hors d'oeuvres served before the | 11:13:07 |
| 11 | call for dinner. I went to the meat -- to where they | 11:13:12 |
| 12 | were serving meat. I did eat meat, and I ceased to eat | 11:13:15 |
| 13 | meat once I saw that the event was not kosher. | 11:13:17 |
| 14 | Q. And when you say, "once you saw the event | 11:13:20 |
| 15 | was not kosher," that would have been based on your | 11:13:25 |
| 16 | observation of the what I'll call foreign fish and/or | 11:13:26 |
| 17 | based on some communication with somebody? | 11:13:30 |
| 18 | A. Based on the observation of foreign fish, | 11:13:34 |
| 19 | and then based on communication; and that is, that | 11:13:40 |
| 20 | there came a point in the evening during the | 11:13:47 |
| 21 | hors d'oeuvres when I became aware of there being a | |
| 22 | pale over the wedding because of the service of these | |

VIDEOTAPED DEPOSITION OF MICHAEL BERENBAUM
CONDUCTED ON THURSDAY, JUNE 29, 2006

68

| | | |
|---|---|---|
| 1 | A.   Which is, you know, I should have inquired | 11:53:07 |
| 2 | further, perhaps. | 11:53:16 |
| 3 | Q.   Have you ever dealt with anyone at | 11:53:19 |
| 4 | Ridgewells in the course of your professional life? | 11:53:20 |
| 5 | A.   Not that I recall. | 11:53:25 |
| 6 | Q.   Do you have any reason to believe Ridgewells | 11:53:30 |
| 7 | acted maliciously?  And by that I'll define malicious | 11:53:38 |
| 8 | as with ill will, actual malice, intent to harm, in | 11:53:39 |
| 9 | this case. | 11:53:42 |
| 10 | A.   Look, I can't ascertain motives of any of | 11:53:46 |
| 11 | the contractual parties.  Since I do not -- Ridgewell | 11:53:50 |
| 12 | is a corporation, my sense of malicious and intent to | 11:53:52 |
| 13 | harm and whatever have you is behavior of an | 11:53:56 |
| 14 | individual, except when it's corporate, you know, | 11:54:02 |
| 15 | practice.  I do think that there was incompetence | 11:54:06 |
| 16 | there, but -- high measure of incompetence, which was | 11:54:07 |
| 17 | irresponsible. | 11:54:09 |
| 18 | Q.   And that's based on what others told you was | 11:54:11 |
| 19 | the arrangement with Ridgewells? | 11:54:15 |
| 20 | A.   It's also based on the fact that if you're | 11:54:18 |
| 21 | having an event like this, you don't put that stuff on | |
| 22 | sushi, and you ascertain what's going to be the content | |

1          IN THE UNITED STATES DISTRICT COURT

2             FOR THE DISTRICT OF COLUMBIA

3

4   MARK A. SIEGEL, et al.,          )  ORIGINAL

5          Plaintiffs,               )

6   vs.                              )  Case No.

7   RIDGEWELLS, INC.,                )  1:05CV01717

8          Defendant/Counter-Plaintiff )  Pages 1-81

9               -   -   -   -   -

10      VIDEOTAPED DEPOSITION OF REBECCA BARON

11                  WASHINGTON, D.C.

12                  FEBRUARY 7, 2006

13  The videotaped deposition of REBECCA BARON was

14  convened on Tuesday, February 7, 2006,

15  commencing at 1:18 p.m., at the offices of Wiley

16  Rein & Fielding, 1776 K Street, Northwest,

17  Washington, D.C. 20006, before Paula G. Satkin,

18  Registered Professional Reporter and Notary

19  Public.

20  Job No. 1-70183

21               -   -   -   -   -

22


L.A.D.
REPORTING &
DIGITAL VIDEOGRAPHY

1100 Connecticut Avenue, NW • Suite 850, Washington, D.C. 20036
Tel: 202.861.3410 • 800.292.4789 • Fax: 202.861.3425
Web: ladreporting.com • E-mail: lisa@ladreporting.com
Additional Offices: Rockville, MD • Baltimore, MD • Greenbelt, MD • McLean, VA

VIDEOTAPED DEPOSITION OF REBECCA BARON
CONDUCTED ON TUESDAY, FEBRUARY 7, 2006

61

1    when one of those women who I referenced walked

2    by and I think she said, you know, can you

3    please explain like the severity of the

4    situation and he said something to them.    I

5    don't know what he said.

6         Q.    Have you sought any counsel for

7    anyone, professional counsel -- by professional

8    I'll define it as from a doctor a mental health

9    professional, a social worker or a Rabbi or any

10   other member of the clergy as a result of what

11   happened at your wedding?

12        A.    No.

13        Q.    Forgive me for prying and I

14   promise I won't very far at all, but in light of

15   the allegations of infliction of emotional

16   distress on you in this case, I need to ask what

17   was the loss you sought Rabbi Wohlberg's

18   counseling for?

19        A.    My dog and my grandfather died

20   within a week of each other and I just didn't

21   really get it.    I sort of sought counseling from

22   him to find out why he believed in God and why I

# EXHIBIT 3

# THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MARK A. SIEGEL, *et al.*,

     Plaintiffs,

v.

RIDGEWELL'S, INC.,

     Defendant/Counter-Plaintiff.

Case No. 1:05CV01717
Judge: John Garrett Penn

## PLAINTIFF MICHAEL BERENBAUM'S ANSWERS TO DEFENDANT'S FIRST SET OF INTERROGATORIES

TO:    RIDGEWELL'S, INC.
       c/o Jeffrey M. Schwaber (D.C. Bar No. 419681)
       Ivonne C. Lindley (D.C. Bar No. 485577)
       Stein, Sperling, Bennett, De Jong, Driscoll & Greenfeig, P.C.
       25 West Middle Lane
       Rockville, MD 20850

FROM:   MICHAEL BERENBAUM
       c/o Nathan Lewin (D.C. Bar No. 38299)
       Alyza D. Lewin (D.C. Bar No. 445506)
       Lewin & Lewin, LLP
       1828 L Street, N.W., Suite 901
       Washington, DC 20036

## INTERROGATORIES

### INTERROGATORY NO. 1:

State your full name, home and business address, marital status, date of birth, social security number, age, any other names by which you have been known, current occupation, and names and ages of children.

## ANSWER TO INTERROGATORY NO. 3:

**I don't recall.**

## INTERROGATORY NO. 4:

Please state whether you ate any sushi at Siegel Wedding Reception, and, if so, identify the type of fish that was in the sushi you ate.

## ANSWER TO INTERROGATORY NO. 4:

**I did until I noticed fish that appeared to be prohibited on the sushi plate and then I ceased.**

## INTERROGATORY NO. 5:

Please state whether you ate any dairy products, including cream cheese, at the Siegel Wedding Reception and describe with particularity the basis for your statement.

## ANSWER TO INTERROGATORY NO. 5:

**No.**

## INTERROGATORY NO. 6:

Precisely state each and every fact that supports or relates to your allegation that Defendant served sushi at the Siegel Wedding Reception that contained octopus and eel as stated in the Complaint ¶26 and please identify the source of that information.

<u>ANSWER TO INTERROGATORY NO. 24</u>:

**Our damage claim is detailed in the expert reports.**

Dated: June 8, 2006

Michael Berenbaum

Dated:

NATHAN LEWIN (D.C. Bar No. 38299)
ALYZA D. LEWIN (D.C. Bar No. 445506)
**LEWIN & LEWIN, LLP**
1828 L Street, N.W., Suite 901
Washington, D.C. 20036
(202) 828-1000

*Attorneys for Plaintiffs*

## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MARK A. SIEGEL, *et al.*,

     Plaintiffs,

v.

RIDGEWELL'S, INC.,

     Defendant/Counter-Plaintiff.

Case No. 1:05CV01717
Judge: John Garrett Penn

### PLAINTIFF MELISSA PATACK'S ANSWERS
### TO DEFENDANT'S FIRST SET OF INTERROGATORIES

TO:    RIDGEWELL'S, INC.
        c/o Jeffrey M. Schwaber (D.C. Bar No. 419681)
        Ivonne C. Lindley (D.C. Bar No. 485577)
        Stein, Sperling, Bennett, De Jong, Driscoll & Greenfeig, P.C.
        25 West Middle Lane
        Rockville, MD 20850

FROM:    MELISSA PATACK
        c/o Nathan Lewin (D.C. Bar No. 38299)
        Alyza D. Lewin (D.C. Bar No. 445506)
        Lewin & Lewin, LLP
        1828 L Street, N.W., Suite 901
        Washington, DC 20036

### INTERROGATORIES

INTERROGATORY NO. 1:

    State your full name, home and business address, marital status, date of birth,

social security number, age, any other names by which you have been known, current

occupation, and names and ages of children.

## ANSWER TO INTERROGATORY NO.3:

Yes.


## INTERROGATORY NO. 4:

Please state whether you ate any sushi at Siegel Wedding Reception, and, if so, identify the type of fish that was in the sushi you ate.


## ANSWER TO INTERROGATORY NO. 4:

No.


## INTERROGATORY NO. 5:

Please state whether you ate any dairy products, including cream cheese, at the Siegel Wedding Reception and describe with particularity the basis for your statement.


## ANSWER TO INTERROGATORY NO. 5:

No.


## INTERROGATORY NO. 6:

Precisely state each and every fact that supports or relates to your allegation that Defendant served sushi at the Siegel Wedding Reception that contained octopus and eel as stated in the Complaint ¶26 and please identify the source of that information.

that is serious and verifiable," and describe with particularity the harm that you allege is "serious" and "verifiable".

## ANSWER TO INTERROGATORY NO. 12:

**My understanding is that guests at the wedding who would not knowingly eat shrimp, eel or octopus mistakenly ate those foods. Their harm was serious and verifiable. Paragraph 56 does not allege that I personally ate shrimp, eel or octopus.**

## INTERROGATORY NO. 13:

Describe with particularity the "severe emotional injury" you allege you suffered as a result of the Defendant's alleged conduct, including stating any expenses you have incurred for treatment of any such severe emotional injury.

## ANSWER TO INTERROGATORY NO. 13:

**My emotional harm derived from knowing my friends were very upset.**

## INTERROGATORY NO. 14:

Do you contend Defendant acted in a manner that was "reckless"? If so, state each act and fact upon which you base that contention.

or damages claimed by any party, specifying as to each and every such person the category of which he or she has personal knowledge.

## ANSWER TO INTERROGATORY NO. 23:

**I am not aware of any persons with personal knowledge of material facts of this case.**

## INTERROGATORY NO. 24:

Set forth a detailed itemization of your claim for any damages in this case.

## ANSWER TO INTERROGATORY NO. 24:

**The value of my claim for damages has been itemized and appraised by the plaintiffs' expert witness.**

Dated:  June 6, 2006

Melissa Patack

Dated:

NATHAN LEWIN (D.C. Bar No. 38299)
ALYZA D. LEWIN (D.C. Bar No. 445506)
**LEWIN & LEWIN, LLP**
1828 L Street, N.W., Suite 901
Washington, D.C. 20036
(202) 828-1000

*Attorneys for Plaintiffs*

# THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MARK A. SIEGEL, *et al.*,

    Plaintiffs,

v.

                                       Case No. 1:05CV01717
                                       Judge: John Garrett Penn

RIDGEWELL'S, INC.,

    Defendant/Counter-Plaintiff.

## PLAINTIFF MICHAEL BERENBAUM'S ANSWERS TO DEFENDANT'S FIRST SET OF INTERROGATORIES

TO:      RIDGEWELL'S, INC.
            c/o Jeffrey M. Schwaber (D.C. Bar No. 419681)
            Ivonne C. Lindley (D.C. Bar No. 485577)
            Stein, Sperling, Bennett, De Jong, Driscoll & Greenfeig, P.C.
            25 West Middle Lane
            Rockville, MD 20850

FROM:    MICHAEL BERENBAUM
            c/o Nathan Lewin (D.C. Bar No. 38299)
            Alyza D. Lewin (D.C. Bar No. 445506)
            Lewin & Lewin, LLP
            1828 L Street, N.W., Suite 901
            Washington, DC 20036

## INTERROGATORIES

### INTERROGATORY NO. 1:

State your full name, home and business address, marital status, date of birth, social security number, age, any other names by which you have been known, current occupation, and names and ages of children.

## INTERROGATORY NO. 13:

Precisely state each and every fact that supports or relates to your allegation made in ¶56 of the Complaint that you were a victim of a "physical impact and incurred harm that is serious and verifiable," and describe with particularity the harm that you allege is "serious" and "verifiable".

## ANSWER TO INTERROGATORY NO. 13:

Paragraph 56 does not say that I personally was the victim of a "physical impact." Guests who keep kosher and unwittingly ate shrimp, octopus or eel, or ate cream cheese with meat hors d'oeuvres were subject to "serious and verifiable" harm.

## INTERROGATORY NO. 14:

Describe with particularity the "severe emotional injury" you allege you suffered as a result of the Defendant's alleged conduct, including stating any expenses you have incurred for treatment of any such severe emotional injury.

## ANSWER TO INTERROGATORY NO. 14:

Eating non-kosher food violates my religious requirements, my obligations to God and to tradition. I do not eat non-kosher foods at any occasion. I felt uncomfortable and deceived.

<u>ANSWER TO INTERROGATORY NO. 24</u>:

> Our damage claim is detailed in the expert reports.

Dated: June 8, 2006

Michael Berenbaum

Dated:

NATHAN LEWIN (D.C. Bar No. 38299)
ALYZA D. LEWIN (D.C. Bar No. 445506)
**LEWIN & LEWIN, LLP**
1828 L Street, N.W., Suite 901
Washington, D.C. 20036
(202) 828-1000

*Attorneys for Plaintiffs*

# THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MARK A. SIEGEL, *et al.*,

     Plaintiffs,

v.

RIDGEWELL'S, INC.,

     Defendant/Counter-Plaintiff.

Case No. 1:05CV01717
Judge: John Garrett Penn

## PLAINTIFF MELISSA PATACK'S ANSWERS TO DEFENDANT'S FIRST SET OF INTERROGATORIES

TO:     RIDGEWELL'S, INC.
        c/o Jeffrey M. Schwaber (D.C. Bar No. 419681)
        Ivonne C. Lindley (D.C. Bar No. 485577)
        Stein, Sperling, Bennett, De Jong, Driscoll & Greenfeig, P.C.
        25 West Middle Lane
        Rockville, MD 20850

FROM:   MELISSA PATACK
        c/o Nathan Lewin (D.C. Bar No. 38299)
        Alyza D. Lewin (D.C. Bar No. 445506)
        Lewin & Lewin, LLP
        1828 L Street, N.W., Suite 901
        Washington, DC 20036

### INTERROGATORIES

INTERROGATORY NO. 1:

State your full name, home and business address, marital status, date of birth, social security number, age, any other names by which you have been known, current occupation, and names and ages of children.

that is serious and verifiable," and describe with particularity the harm that you allege is "serious" and "verifiable".

## ANSWER TO INTERROGATORY NO. 12:

**My understanding is that guests at the wedding who would not knowingly eat shrimp, eel or octopus mistakenly ate those foods. Their harm was serious and verifiable. Paragraph 56 does not allege that I personally ate shrimp, eel or octopus.**

## INTERROGATORY NO. 13:

Describe with particularity the "severe emotional injury" you allege you suffered as a result of the Defendant's alleged conduct, including stating any expenses you have incurred for treatment of any such severe emotional injury.

## ANSWER TO INTERROGATORY NO. 13:

**My emotional harm derived from knowing my friends were very upset.**

## INTERROGATORY NO. 14:

Do you contend Defendant acted in a manner that was "reckless"? If so, state each act and fact upon which you base that contention.

or damages claimed by any party, specifying as to each and every such person the category of which he or she has personal knowledge.

## ANSWER TO INTERROGATORY NO. 23:

I am not aware of any persons with personal knowledge of material facts of this case.

## INTERROGATORY NO. 24:

Set forth a detailed itemization of your claim for any damages in this case.

## ANSWER TO INTERROGATORY NO. 24:

The value of my claim for damages has been itemized and appraised by the plaintiffs' expert witness.

Dated: June 6, 2006

Melissa Patack

Dated:

NATHAN LEWIN (D.C. Bar No. 38299)
ALYZA D. LEWIN (D.C. Bar No. 445506)
LEWIN & LEWIN, LLP
1828 L Street, N.W., Suite 901
Washington, D.C.  20036
(202) 828-1000

*Attorneys for Plaintiffs*