THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

MARK A. SIEGEL, *et al.*,

    Plaintiffs,

v.

RIDGEWELL'S, INC.,

    Defendant/Counter-Plaintiff.

Case No. 1:05CV01717
Judge: Richard J. Leon

### SUPPLEMENTAL MEMORANDUM
### TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant, Ridgewell's Inc. ("Ridgewells"), by their attorneys, Jeffrey M. Schwaber, Ivonne C. Lindley, and Stein, Sperling, Bennett, De Jong, Driscoll & Greenfeig, P.C., hereby submits this Supplemental Memorandum to Defendant's Motion for Summary Judgment, following the hearing held on June 4, 2007,[1] and states as follows:

**I.  PAROLE EVIDENCE CONTRADICTING THE CONTRACT'S UNAMBIGUOUS TERMS IS INADMISSIBLE AS A MATTER OF LAW.**

When questioned by counsel in deposition, Plaintiff Mark Siegel confirmed the Contract was the only written agreement with Ridgewells:[2]

    Q  Is Exhibit 4 the contract at issue in this case?

    A  As I understood it, yeah.  This is the only signed document, as far as I know.  My wife signed it.

    Q  Okay.  So that's what you understand to be the contract?

---

[1] The Court invited the parties to submit supplemental memoranda within ten (10) days after the receipt of the hearing transcript, which was filed on June 13, 2007.  <u>Exhibits 1-9</u> referred to in this Supplemental Memoranda were attached to Defendant's Motion for Summary Judgment and are incorporated herein.  Additional exhibits are attached hereto and incorporated herein as <u>Exhibits A-C</u>.

[2] <u>Exhibit 1</u>, Dep. M. Siegel Dep. at 221:12-15.

STEIN, SPERLING, BENNETT, DE JONG, DRISCOLL & GREENFEIG, P.C.

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301/340-2020

> A    Well, that and all the endless discussions that we had about what should be included here.
>
> Q    The only written contract that's – when there's a written contract being referred to, is it Exhibit 4?
>
> A    A written contract, yes.

Plaintiffs knew what kosher meant and understood there was a distinction between a kosher and non-kosher contract. Nevertheless, they knowingly opted not to pay for the kosher contract that Ridgewells offered to them.[3] In deposition, Plaintiff Judith Siegel testified,[4]

> Q: Why is it that you didn't pay for the rabbinical supervision or the kosher plates?
>
> A: We didn't need it, in terms of our -- our kashruth[5], as I said.

Plaintiff Mark Siegel testified:[6]

> Q:   And so you rejected Ridgewells?
>
> A:   Yes.
>
> Q:   And Ridgewells' proposal to you that you rejected was for their kosher option, including cooking in a kosher facility, using separate dishes, and having a mashgiach for all purposes, correct?
>
> A:   Yes.

The Contract is an unambiguous manifestation of the parties' agreement. It is undisputed that the Contract does not contain any representation, promise, or agreement to provide a kosher event.[7] In fact, the word "kosher" does not even appear on the face of the Contract.

---

[3] At that point, their own expert acknowledges the event was not going to be kosher regardless of any alleged wrongdoing.
[4] Exhibit 2, Dep. J. Siegel, page 82, line 19-22
[5] Kashruth is a term signifying the Siegels' level of Kosher observance.
[6] Exhibit 1, Dep. M. Siegel 54:2-8; 157:3-159:9.
[7] A copy of the Contract is attached Exhibit 8. See also Exhibit 1, Dep. M. Siegel Ex. 4.

STEIN, SPERLING, BENNETT, DE JONG, DRISCOLL & GREENFEIG, P.C.

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301/340-2020

2

Plaintiffs' effort to vary the terms of the Contract with oral representations is barred by the Parol Evidence Rule. "If the document is facially unambiguous, its language should be relied upon as providing the best objective manifestation of the parties' intent. Extrinsic evidence of the parties' subjective intent may be resorted to only if the document is ambiguous." 1010 Potomac Associates v. Grocery Manufacturers of America, Inc., 485 A.2d 199, 205 (D.C. 1984)(citations omitted). In Reliable Const. & Realty Co. v. Waterproofing Service, 34 A.2d 124, 125 (D.C. App. 1943) the court explained:

> Few contracts are executed without some prior negotiation and discussion, by correspondence or in conversation, but the agreement of the parties is that finally expressed in the written instrument. And where the instrument clearly sets forth the agreement, parol evidence will not be admitted to vary or contradict its terms.

"[W]hen parties have reduced their entire agreement to writing, the Parol Evidence Rule excludes evidence of prior or contemporaneous oral agreements inconsistent with the express terms of the writing." Radiation Systems, Inc. v. Amplicon, Inc., 882 F.Supp. 1101, 1103 (D.D.C.1995). "Under the parol evidence rule, '[e]xtrinsic or parol evidence which tends to contradict, vary, add to, or subtract from the terms of a written contract must be excluded'." Affordable Elegance Travel, Inc. v. Worldspan, L.P., 774 A.2d 320, 327 (D.C. 2001).

In a desperate attempt to create an ambiguity, Plaintiffs now for the first time purport to rely on the "made to order" language in the Contract. The Contract contains the phrase "made to order" referring to the sushi. It simply is a phrase in the Contract for which there is no definition. This Court inquired, "Does the contract define what that means, made to order? Do they actually say by which we mean the following or is it just a phrase basically that's in the contract?"[8] Plaintiffs' counsel responded that Ridgewells' executive chef, David Keener, said

STEIN, SPERLING, BENNETT, DE JONG, DRISCOLL & GREENFEIG, P.C.

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301/340-2020

---

[8] Transcript of hearing on June 4, 2007, at page 32, line 13.

3

this term meant "somebody standing there cutting it up."  That assertion completely mischaracterizes Mr. Keener's testimony:[9]

> [W]e don't make -- the maki *(sic)* that I was talking about, which is like a cylinder of rolled-up rice that you cut, we make that at Ridgewell's. The sushi which is the ngiri that has the rice on the bottom and the fish on top, we don't make that at Ridgewell's. That we always subcontract out.

Absent a material ambiguity regarding the Contract, summary judgment should be granted as a matter of law.

## II. THE DISTRICT OF COLUMBIA CONSUMER PROTECTION ACT (DCCPA).

A. <u>Plaintiffs must prove Ridgewells made an intentional misrepresentation</u>.

Ridgewells is entitled to judgment in its favor on Plaintiffs' claims brought pursuant to the DCCPA because it is undisputed that Ridgewells did not make any intentional misrepresentations related to the Contract.  Plaintiffs conceded this fact in pleadings, stating "[a]t this stage of the proceeding, [Plaintiffs] cannot allege or prove that Ridgewells' misrepresentation was intentional,"[10] and Plaintiffs' counsel stated at the hearing "we agree that we can't say they intentionally put shrimp on the sushi platter."[11]  Since there is no liability under the DCCPA for an *unintentional* misrepresentation, Plaintiffs cannot make a sufficient showing on this essential element.[12]  Therefore Plaintiffs' claim under the DCCPA must fail as a matter of law.

---

STEIN, SPERLING, BENNETT, DE JONG, DRISCOLL & GREENFEIG, P.C.

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301/340-2020

[9] <u>Exhibit A</u>, Deposition of David Keener 60:20 – 61:1-4.
[10] Plaintiffs' Memorandum of Law in Support of Motion for Summary Judgment, page 10.
[11] Transcript of hearing on June 4, 2007 at page 34, line 9.
[12] See Defendant's Motion for Summary Judgment, at pages 7-9, and Opposition to Plaintiffs' Motion for Summary Judgment at pages 3-4 for a discussion of the legal support for this proposition.

4

B. <u>Plaintiffs must prove their reliance on any misrepresentation was reasonable</u>.

To sustain a claim of fraudulent misrepresentation, Plaintiffs must prove justifiable reliance.[13] Even if the Court finds that *negligent* misrepresentations fall within the purview of the DCCPA, Plaintiffs' claims still fail absent reasonable reliance as a matter of law.[14]

In <u>Williams v. District of Columbia</u>, 902 A.2d 91, 94 (D.C. 2006), in affirming the trial court's granting of summary judgment on the basis that a party failed to show its reliance on a misrepresentation was reasonable, the court stated "[i]n cases involving commercial contracts negotiated at arm's length, a plaintiff claiming fraud must establish by clear and convincing evidence that, *inter alia*,[15] 'the defrauded party's reliance [was] *reasonable*'." <u>Citing</u> <u>Hercules & Co. v. Shama Rest. Corp.</u>, 613 A.2d 916, 923 (D.C.1992) (emphasis in original).  A "party alleging it was defrauded, at least in context of commercial dealings at arm's length, must establish not only that it actually relied on a false representation, but also that its reliance was objectively reasonable." <u>Hercules & Co., Ltd.</u>, 613 A.2d at 933.[16]  As the court explained:

---

[13] <u>See</u> Standardized Civil Jury Instructions for the District of Columbia, §20.01 (2006 rev. ed.).
[14] Plaintiffs launch a late and desperate attempt to resuscitate their DCCPA claim by concocting a "new" purported misrepresentation, the "made to order" sushi.  As a threshold matter, this misrepresentation was never pled, and allegations of misrepresentation must be set forth with specificity. <u>See</u> <u>Atraqchi v. GUMC Unified Billing Services</u>, 788 A.2d 559, 563 (D.C. 2002) ("Fraud claims are subject to strict pleading requirements: 'Fraud is never presumed and must be particularly pleaded. It must be established by clear and convincing evidence, which is not equally consistent with either honesty or deceit'.").  Furthermore, there is no clear and convincing evidence of the unambiguous meaning of that phrase, or of <u>any</u> actual misrepresentation or detrimental reliance in any regard.  "The clear and convincing standard is much more demanding; it requires "a degree of persuasion higher than 'mere preponderance of the evidence,' but still somewhat less than 'clear, unequivocal and convincing' or 'beyond a reasonable doubt.'" <u>Hopkins v. Price Waterhouse</u>, 737 F.Supp. 1202, n.3 (D.D.C. 1990), citing <u>Collins Sec. Corp. v. SEC</u>, 562 F.2d 820, 824 (D.C.Cir. 1977).
[15] "The remaining elements are a false representation, in reference to material fact, with knowledge of its falsity, and an intent to deceive." <u>Williams</u>, 902 A.2d at n.4, citing <u>Atraqchi</u>, 788 A.2d at 563.
[16] These pleading and proof requirements logically apply with equal force to allegations of negligent misrepresentation.

STEIN, SPERLING, BENNETT, DE JONG, DRISCOLL & GREENFEIG, P.C.

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301/340-2020

5

> One cannot close his eyes and blindly rely upon the assurances of another absent some fiduciary relationship or emergency.... In the case at bar, the evidence ... clearly establishes that both [plaintiffs] read the written agreement and understood that it contained terms materially different from the purported oral assurances. **In such a situation, any continued reliance on the purported oral assurances was clearly unreasonable**.

Id., at 924 (citations omitted) (Emphasis added).

Ridgewells initially offered to the Plaintiffs a strictly kosher catering contract, which the Plaintiffs rejected.[17] Plaintiffs wanted a less expensive alternative.[18] Mark Siegel asked if in lieu of a kosher contract, Ridgewells simply could include kosher meat and not serve dairy products.[19] Ridgewells agreed to do both of these things, and did so.[20] At all times relevant hereto, Ridgewells made it clear to the Plaintiffs that the Siegel Wedding Reception was not a kosher event.[21] The written Contract is clear and is not for a kosher event. It is unreasonable as a matter of law for Plaintiffs to have relied upon any alleged conflicting oral representations prior to execution of the Contract.[22]

Plaintiffs' own expert in Jewish dietary laws, Rabbi Leonard Gordon, concedes that the circumstances under which the food was prepared and served at the Siegel Wedding Reception was never going to be kosher, even assuming no shellfish was served, and even if there was no dispute about Ridgewells having honored the strict letter of the parties' agreement. Rabbi Gordon testified in pertinent part:[23]

---

[17] Exhibit 1, Dep. M. Siegel at 54:4-11; 157:3-159:9.
[18] See Exhibit 1, Dep. M. Siegel at 58:20-61:20; Exhibit 5, Dep. T. Silberstein at 210:10-211:12.
[19] See Exhibit 1, Dep. M. Siegel at 157:10-22.
[20] See Exhibit 1, Dep. M. Siegel at 97:7-14; Exhibit 5 Dep. T. Silberstein at 47:18-48:5; 54:18-56:9; 132:22-133:6; 149:4-16; 190:18-191:8 Exhibit 9, Dep. D. Keener at 97:21-98:1.
[21] See Exhibit 1, Dep. M. Siegel at 32:18-22; Exhibit 5, T. Silberstein at 59:6-9.
[22] In fact, Plaintiffs' counsel, recognizing this reality, acknowledged at the hearing that the event was not kosher, but instead was "kosher style". This moniker is irrelevant and meaningless as a matter both of secular and of Jewish law.
[23] Exhibit B, Deposition of Rabbi Leonard Gordon, at 55:14 – 56:11.

STEIN, SPERLING, BENNETT, DE JONG, DRISCOLL & GREENFEIG, P.C.

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301/340-2020

6

> Q. …If that caterer uses their non-kosher dishes and prepares a meal in a clearly and undisputedly non-kosher kitchen at the Corcoran Gallery, and it's hot food, and the kitchen is not limited -- the food within the kitchen facility is not limited to just this event, and the food is also prepared in advance at Ridgewells', at the caterer's non-kosher commissary, and it includes strictly kosher meat, is there any way that you as a conservative rabbi could call that food, that meat, kosher?
>
> MR. LEWIN: Objection.
>
> THE WITNESS: Agreeing with -- or taking your premise that the pot or the plate was, as you say, non-kosher, by which we mean capable of imparting either dairy or non-kosherness to the meat, then no. But --
>
> BY MR. SCHWABER: "No" meaning it would not be kosher?
>
> A. It would not be kosher.

Plaintiffs cannot now claim that their reliance on any representations made outside of the actual written Contract were reasonable and sue under the DCCPA for fraud. In <u>Hercules & Co. Ltd.</u>, 613 A.2d at 934, the court states:

> [I]f the text of an agreement could be undermined on the basis of allegations of what took place during negotiations,[c]ontracts would become no more than presumptive statements of the parties' intentions, instead of legally enforceable agreements. And the give-and-take of negotiations would become meaningless if, after making concessions in order to obtain other contractual protections, a knowledgeable party is later able to reclaim what it had given away by alleging that it had, in fact, relied not on the writing but on the prior oral statements.

As undersigned counsel argued to this Court:

> The notion that they could rely on this contract for any representation or rely on Miss Nann in the face of this contract to infer by silence that somehow she should know that shrimp is bad, when using the pot that cooked pork the night before is not bad, that somehow she should glean the level of semi-kosherness of a particular wedding guest flies in the face of the rules of keeping kosher and certainly flies in the face of the Consumer Protection Act.

STEIN, SPERLING, BENNETT, DE JONG, DRISCOLL & GREENFEIG, P.C.

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301/340-2020

### III. BATTERY.

Ridgewells seeks judgment in its favor and against Plaintiff Berenbaum on his Battery claim, because it is undisputed that he did not eat sushi with shellfish at the Siegel Wedding Reception. Battery requires intent and harmful or offensive bodily contact.

Plaintiff Berenbaum "cannot affirmatively state [he] ate unkosher food" at the Siegel Wedding Reception.[24] It is undisputed that Ridgewells' service of shrimp at the Siegel Wedding Reception was neither willful nor intentional.[25] Even if Plaintiff Berenbaum did unwittingly eat un-kosher food, it could not be harmful or offensive. This was confirmed by Plaintiffs' expert Rabbi Gordon:

> Q: Have you ever counselled *(sic)* congregants in the context of the ramifications of unwitting ingestion of unkosher food?
>
> A. I'm thinking. No, I don't believe that question has ever come up. **I think it is fairly broadly known in my community that unwitting acts are without penalty or shame.**

(Emphasis added) Therefore, as a matter of law, Plaintiff Berenbaum cannot establish the essential elements of the claim of battery.

### IV. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS.

Ridgewells is entitled to judgment in its favor and against each Plaintiff on their claims of Negligent Infliction of Emotional Distress. There is no question that Ridgewells did not have any physical contact with any Plaintiff which resulted in a serious and verifiable physical injury.

District of Columbia follows the "impact rule" which states that a plaintiff only can recover for negligent infliction of emotional distress that causes direct physical injury. See Morgan v. Psychiatric Institute of Washington, 692 A.2d 417, 420 (D.C.1997). In an attempt to

---

[24] Exhibit 3, Dep. M. Berenbaum at 38:2-5.
[25] See Exhibit 1, Dep. M. Siegel at 170:20-171:18; Exhibit 4, Dep. C. Baron at 81:8-18; 82:17-19; 160:8-161:2; Exhibit 2, Dep. J. Siegel at 104:9; Exhibit 3, Dep. M. Berenbaum, at 68:6-17.

STEIN, SPERLING, BENNETT, DE JONG, DRISCOLL & GREENFEIG, P.C.

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301/340-2020

8

save themselves from summary judgment on this claim, Plaintiffs rely on the very limited -- and in this instance inapposite – "zone of danger" exception to the impact rule.

Plaintiffs' counsel's reliance on <u>Sowell v. Hyatt Corp.</u>, 623 A.2d 1222 (D.C. 1993) is completely misplaced.  In that case, the plaintiff claimed that, upon seeing worms in her food, she "vomited repeatedly shortly thereafter, and was treated by a doctor who prescribed some medication for her, and the following day put her under general anesthesia to examine her throat. The doctor, upon examination of plaintiff's throat, diagnosed 'an esophageal tear.'"[26]  The defendant moved for summary judgment on the grounds that plaintiffs "were barred from recovering damages solely for psychological reactions to foreign matter in food where Mrs. Sowell 'sees, but does not consume, unwholesome food'," and "that under District of Columbia case law, a plaintiff was required to show a causal connection between consumption of the foreign matter and the alleged injuries, and that in the absence of any consumption there could be no such causal relation." <u>Sowell</u>, 623 A.2d at 1222.  In reversing the trial court's order granting summary judgment, the Court of Appeals in <u>Sowell</u>, 623 A.2d at 1226, stated that plaintiff,

> [W]as bringing the worm towards her mouth, had already eaten most of her lunch, and was afraid that the rice had contained other worms which she had already eaten without noticing them, and further, that she might become ill and even aggravate her previous stomach surgery. Eating contaminated food is evidence of physical endangerment. *** Thus… the Sowells could sue to recover not only for injuries as a result of the contaminated rice consumed by Mrs. Sowell but also for injuries arising from her reaction to the worm she saw in the rice, because seeing the worm caused Mrs. Sowell to fear that she had eaten contaminated food, which was a fear for her physical safety.

Unlike the Plaintiffs in this case, Mrs. Sowell **did in fact** suffer a physical harm that was serious and verifiable as a result of the hotel's negligence.  None of the Plaintiffs in this case

STEIN, SPERLING, BENNETT, DE JONG, DRISCOLL & GREENFEIG, P.C.

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301/340-2020

---

[26] <u>Sowell</u>, 623 A.2d at 1222.  In addition, Mrs. Sowell alleged she "'ultimately required an operation to repair damage to her throat from the constant vomiting,' and continued to have an

consumed any of the offending sushi. None of the Plaintiffs had psychological reactions for which they received treatment. Plaintiff Berenbaum, as the **only** Plaintiff who even kept kosher, "cannot affirmatively state [he] ate unkosher food" at the Siegel Wedding Reception.[27]

## V.    RIDGEWELLS IS ENTITLED TO JUDGMENT FOR BREACH OF CONTRACT

It is undisputed that Plaintiffs Mark and Judith Siegel failed to pay to Ridgewells the outstanding balance of the bill for the Siegel Wedding Reception. Therefore, Ridgewells is entitled to judgment as to Count I of its Counter Complaint. Plaintiffs argue they were not obligated to pay because Ridgewells failed to perform under the Contract. Alternatively, Plaintiffs claim that Ridgewells should have charged their credit card automatically.

The Contract was clear that payment was due three days before the event. Payment was a condition precedent to Ridgewells' performance pursuant to the express language of the Contract. "A 'condition precedent' is a fact which must exist or occur before a duty of immediate performance of a promise arises." Brier v. Orenberg, 90 A.2d 832, 834 (1952).

Ridgewells did not materially breach a prerequisite of the Contract. While arguably it could have charged the balance on the Siegel's credit card, that was not the course of dealing between the parties. Furthermore, as Ridgewells' representative, Ms. Nann, testified, recounting the words and behavior of Plaintiff Judy Siegel on the night of the wedding:[28]

> And Judy came down asking for the -- the -- you know, "why is the fucking bread baskets not on the tables," they were all just there. She yelled, "Don't you know your job, do I have to come down here and run everything for you? I've worked with Ridgewells a lot in the past, and this isn't the way things are done. You better not use my credit card to charge anything else. And by the way, you ran out of sushi. You promised us that you wouldn't run out of

STEIN, SPERLING, BENNETT, DE JONG, DRISCOLL & GREENFEIG, P.C.

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301/340-2020

---

'adverse reaction to rice and certain foods that cause substantial recollection and psychological replay of the incident.'" Id., at n.1.
[27] Exhibit 3, Dep. M. Berenbaum at 38:2-5.
[28] Exhibit C, Deposition of Toby Nann Silberstein at 83:21 – 84:10.

10

sushi.  And I didn't see one hors d'oeuvres being passed, and where were they and what did you do with them?"

In any event, whether or not Ridgewells could have charged the credit card has nothing to do with Plaintiffs' <u>liability</u> for their failure to pay pursuant to the Contract.  Plaintiffs' obligation to pay was never excused before Ridgewells' performance under the Contract was due.  Therefore, Ridgewells is entitled to judgment for liability on that count.

\* \* \*

WHEREFORE, Defendant, Ridgewell's, Inc., seeks the relief set forth in its previously filed Memorandum in Support of Motion for Summary Judgment

Respectfully Submitted

STEIN, SPERLING, BENNETT, DE JONG, DRISCOLL & GREENFEIG, P.C.

By: /s/
Jeffrey M. Schwaber (D.C. Bar No. 419681)
Ivonne C. Lindley (D.C. Bar No. 485577)
25 West Middle Lane
Rockville, MD 20850
(301) 340-2020
(301) 838-3250 (facsimile)

Attorneys for Ridgewell's, Inc.

L:\CLIENTS\R\Ridgewells\Siegel.008\litigation\250.SMJ.Supplemental Memo-rev2.final.doc