UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED
SEP 3 0 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

MARK A. SIEGEL, *et al.*,        )
                                 )
            Plaintiffs,          )
                                 )
      v.                         )   Civil Case No. 05-1717 (RJL)
                                 )
RIDGEWELLS, INC.,                )
                                 )
            Defendant.           )

## MEMORANDUM OPINION
(September 30, 2007) [#52, #54]

Plaintiffs, Mark A. Siegel ("Mr. Siegel"), Judith S. Siegel ("Mrs. Siegel"), Rebecca Siegel Baron ("Mrs. Baron"), Craig D. Baron ("Mr. Baron") and Rabbi Michael Berenbaum ("Rabbi Berenbaum") have brought a suit against a Maryland-based company which is one of Washington, D.C.'s best-known caterers, Ridgewells, Inc. ("Ridgewells"), in connection with catering services provided at Mr. and Mrs. Baron's wedding reception on April 2, 2005. Ridgewells has lodged various counterclaims against plaintiffs. Plaintiffs and defendant have moved for summary judgment on certain claims and counterclaims. After reviewing the briefs, oral argument, and the entire record, the Court GRANTS summary judgment in part and DENIES summary judgment in part as to each side's motion.

## BACKGROUND

This is a diversity case about a wedding reception that went wrong. This dispute arises out of a contract between plaintiffs Mr. and Mrs. Siegel and defendant Ridgewells for Ridgewells to cater the Siegel's daughter's wedding reception at the Corcoran Gallery of Art on April 2, 2005. Due to some guests' religious observances, (*i.e.*, in particular the Siegel's future in-laws) the Siegels were interested in serving kosher food. They contacted Ridgewells, and were put in touch with Toby Nann Silberstein ("Ms. Silberstein"), with whom they negotiated the menu and contract. Ms. Silberstein told the Siegels that she was familiar with the Jewish dietary laws because she had served in the past as a "mashgiach," an individual who monitors food preparation to prevent violations of Jewish dietary laws. She did not, however, indicate that she served as a mashgiach for Ridgewells. (Pls. Mem. in Supp. of Mot. for Summ. J., Ex. 5, Silberstein Tr. 24:15-22.) Initially, the Siegels requested a kosher catering contract, which would have included, *inter alia*, using kosher food, preparing the food in a kosher kitchen, and having the process overseen by a mashgiach. Ultimately, however, the Siegels opted not to enter into that contract, which would have been more expensive (Pls. Mem. in Supp. of Mot. for Summ. J., Ex. 3, M. Siegel Tr. 54:2-8), and instead opted for a semi-kosher contract, for which they made an initial down payment of $9500 (Def. Mem. in Supp. of Mot. for Summ. J., Ex. 8) and subsequent payments totaling $27,500. Although the contract does not contain the word "kosher" (Pls. Mem. in Supp. of Mot. for Summ. J., Ex. 8), it is agreed that in discussing the menu, Ms. Silberstein told the Siegels that Ridgewells

2

would use kosher meat and use no dairy or shrimp in preparing the food (Pls. Mem. in Supp. of Mot. for Summ. J., Ex. 5, Silberstein Tr. 56:3-9; 74; 149:3-16). Among the items specifically delineated in the contract was the sushi to be served, which would be "made to order" and contain salmon and yellow fin tuna. (Pls. Mem. in Supp. of Mot. for Summ. J., Ex. 8.) When Ridgewells contracted out the sushi preparation to Sushi USA, the only special requirements on the order form were that the sushi should be prepared with "no meat." (Pls. Mem. in Opp'n, Ex. P.)

Unfortunately, the catering at the wedding reception did not go as planned. The sushi platters that Ridgewells served, which were prepared by Sushi USA, contained shrimp, a non-kosher food item. (Pls. Mem. in Supp. of Mot. for Summ. J., Ex. 5, Silberstein Tr. 78:6-12.) Ridgewells removed this sushi platter upon discovery, replacing it with new sushi platters, which plaintiffs contend contained other non-kosher items such as octopus and eel. While none of the plaintiffs recall eating any non-kosher sushi, the Siegels and Barons were upset that the sushi platter contained shrimp. Furthermore, they believed that Ridgewells made the canapés with cream cheese (Pls. Mem. in Supp. of Mot. for Summ. J., Ex. 3, M. Siegel Tr. 105:10-12), instead of with non-dairy margarine (Pls. Mem. in Supp. of Mot. for Summ. J., Ex. 5, Silberstein Tr. 87:14). The Siegels voiced their complaints to Ms. Silberstein during the reception. Specifically, Mr. Siegel confronted Ms. Silberstein in the downstairs food service area about the cream cheese on

the canapés.[1] (Def. Mem. in Opp'n, Ex. 1, M. Siegel Tr. 115:8-15, 144:11-14.) At some point, Mr. Siegel relayed his beliefs about dairy being served to his family and other wedding guests. (Def. Mem. in Opp'n, Ex. 1, M. Siegel Tr. 115:16-116:11.)

Although plaintiffs believe that Ridgewells "ruined" the Baron's wedding, they do not believe that Ridgewells deliberately served shrimp. (Pls. Mem. in Supp. of Mot. for Summ. J., Ex. 1, M. Siegel Tr. 170:1-171:18; Ex. 4, C. Baron Tr. 82:9-19.) Not surprisingly, when Ridgewells ultimately submitted the final bill to the Siegels, Ridgewells credited the full value of the sushi, approximately $2200. To date, however, the Siegels have not paid the remaining balance of the catering bill: $11,313.86. (Compl., Ex. 2.)

Instead, the Siegels, Barons and Rabbi Berenbaum brought this suit, which alleges claims for (1) violation of the District of Columbia Consumer Protection Act ("DCCPA"); (2) breach of contract as to the Siegels; (3) a battery against Rabbi Berenbaum; and (4) negligent infliction of emotional distress to Rabbi Berenbaum, the Siegels and the Barons. In response, Ridgewells brought counterclaims for (1) breach of contract against the Siegels; (2) defamation against Mr. Siegel; and (3) intentional interference with prospective economic advantage against Mr. Siegel. Plaintiffs now seek summary judgment as to their DCCPA claims and Ridgewells' three counterclaims.

---

[1] Later in the evening, Mr. Siegel went to the serving area and inquired about the remaining wine, which the Siegels had purchased themselves. Whether Ridgewells' employees were collecting the wines or attempting to steal them is a disputed fact, but it is undisputed that Mr. Siegel accused the employees of stealing the wine. (Def. Mem. in Opp'n, Ex. 1, M. Siegel Tr. 178:8- 22;Ex. 8, Silberstein Tr. 93:4-94:22.)

4

Defendant Ridgewells moves for summary judgment as to plaintiffs' DCCPA claim, Rabbi Berenbaum's battery claim, plaintiffs' negligent infliction of emotional distress claim, and Ridgewells' counterclaim for breach of contract. For the following reasons, the Court will GRANT summary judgment for defendant on the battery and negligent infliction of emotional distress claims and for Mr. Siegel on Ridgewells' intentional interference with prospective economic advantage claim. As to all other counts, the parties' motions are DENIED because there is a genuine issue of material fact in dispute between the parties as to each.

## DISCUSSION

### I. Standard of Review

Summary judgment is appropriate when the pleadings and the record demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), and the Court draws all reasonable inferences regarding the assertions made in a light favorable to the non-moving party, *Biodiversity Conservation Alliance v. U.S. Bureau of Land Mgmt.*, 404 F. Supp. 2d 212, 216 (D.D.C. 2005) (citing *Flynn v. Dick Corp.*, 384 F. Supp. 2d 189, 192-93 (D.D.C. 2005)). "[W]hen ruling on cross-motions for summary judgment, the Court shall grant summary judgment

only if one of the moving parties is entitled to judgment as a matter of law upon material facts that are not genuinely disputed." *Barr Labs., Inc. v. Thompson*, 238 F. Supp. 2d 236, 244 (D.D.C. 2002) (citing *Rhoads v. McFerran*, 517 F.2d 66, 67 (2d Cir. 1975)).

The moving party bears the initial burden of "identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *See Celotex*, 477 U.S. at 323-24, 106 (quoting Fed.R.Civ.P. 56(c)). In order to prevail on its motion for summary judgment, the movant must show that the nonmovant "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

In opposing summary judgment, the "nonmoving party [must] go beyond the pleadings and by [its] own affidavits, or by the 'admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. The Court must view the facts in the light most favorable to the nonmovant, giving the nonmovant the benefit of all justifiable inferences derived from the evidence in the record. *Anderson*, 477 U.S. at 255 (1986). The nonmovant, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. However, it may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999); *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993). The nonmovant must present specific facts that would enable a reasonable jury to find in its favor.

*Greene*, 164 F.3d at 675. If the evidence presented "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50.

However, a Court ruling on summary judgment motions must not determine the credibility of witnesses or weigh material facts legitimately in dispute. *Anderson*, 477 U.S. at 255 ("[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge"); *Exxon v. Fed. Trade Comm'n*, 663 F.2d 120, 126 (D.C. Cir. 1980) (holding that the function of the Court is to determine whether relevant factual controversy exists; it is not to make determinations of contested fact). The drawing of inferences is the jury's function so long as the competing inferences are reasonable under the law. *Anderson*, 477 U.S. at 255.

## II.  Negligent Infliction of Emotional Distress

Defendant moved for summary judgment on plaintiffs' claims for negligent infliction of emotional distress due to Rabbi Berenbaum's "possible consumption of shrimp, octopus, or eel" and the emotional distress suffered by the Siegels and the Barons "when the wedding ceremony they had anticipated was ruined." (*See* Compl. ¶ 57-58.)

To prevail on a claim for negligent infliction of emotional distress claim, plaintiffs must prove (1) that Ridgewells acted negligently, (2) that plaintiffs suffered either a physical impact or were within the "zone of danger" of Ridgewells' actions, and (3) that plaintiffs suffered emotional distress that was "serious and verifiable." *Wright v. U.S.*, 963 F. Supp. 7, 18 (D.D.C. 1997) (citing *Jones v. Howard Univ., Inc.*, 589 A.2d 419, 424

(D.C. 1991)). Emotional distress that is considered "serious and verifiable" includes "long continued mental disturbance, as for example in the case of repeated hysterical attacks, or mental aberration." *Williams v. Baker*, 572 A.2d 1062, 1068 (D.C. 1990).

Plaintiffs rely on *Sowell v. Hyatt Corp.*, 623 A.2d 1221 (D.C. 1993), where the plaintiff brought a claim, pursuant to a negligence theory, for damages for emotional distress suffered in connection with finding a worm in her food. Relying on negligent infliction of emotional distress precedent, the D.C. Court of Appeals determined plaintiff was within the "zone of danger" to recover. It noted that since plaintiff had consumed most of her food by the time she observed the worm, concern that she could have already ingested a worm placed her within the zone of danger of consuming contaminated food. *Sowell*, 623 A.2d at 1225-26 ("Fear of contaminated food hitting one's stomach is, like fear of being hit by a truck, a fear for one's physical safety."). The same cannot be said for Rabbi Berenbaum. Simply stated, there is no evidence here that Rabbi Berenbaum ate any sushi that contained non-kosher items. Indeed, when asked whether "when he saw the shrimp . . . did he eat any of it," Rabbi Berenbaum testified "[n]ot that I recall" and "I don't recall specifically eating it." (Def. Mem. in Supp. of Summ. J., Ex. 3, Berenbaum Tr. 36:8-10, 18-19.) Although he says he ate sushi until he realized it contained non-kosher food, his presumption that he ate non-kosher food, at this stage of the litigation, is not sufficient to place him in the zone of danger. (Pl. Opp'n, Ex. C, Berenbaum Tr. 31:18-24; 32:6-19 (testifying that at some point he realized something was wrong with the food); Resp. Berenbaum Interrog. No. 13 (noting that guests who ate shrimp, octopus

8

or eel sushi had a "serious and verifiable" harm, but not specifically including himself)). Accordingly, Ridgewells is entitled to summary judgment on his claim of negligent infliction of emotional distress as to Rabbi Berenbaum.

As to the allegations of negligent infliction of emotional distress by the Siegels and Barons from "severe emotional injury when the wedding ceremony they had anticipated was ruined," the allegations do not rise to the level of demonstrating that they have suffered "serious and verifiable" injuries. (*See, e.g.*, M. Siegel Tr. 183:4, 199:7-12 (testifying that memory of wedding ruined and he was unable to mingle with guests at reception)). Other than the tainted memories of the wedding reception, plaintiffs point to no evidence indicating any physical manifestation of this alleged emotional distress or long-term mental disturbance caused by the emotional distress showing that the emotional distress was "severe and verifiable." *See Bernstein v. Roberts*, 405 F. Supp. 2d 34 (D.D.C. 2005) (granting summary judgment against plaintiff's claim for negligent infliction of emotional distress based on U.S. Marshal's taking her property when executing a seizure writ of her husband's property). Accordingly, Ridgewells is also entitled to summary judgment on the Siegels' and Baron's claims for negligent infliction of emotional distress.

## III.   Battery

Defendant next moves for summary judgment on Rabbi Berenbaum's battery claim.[2]  The basis of Rabbi Berenbaum's battery claim is that he was a victim of "offensive contacts" with non-kosher food, such as shrimp, octopus and eel.  (Compl. ¶ 54.)

Under District of Columbia law, "a battery is an intentional act that causes a harmful or offensive bodily contact."  *Etheredge v. District of Columbia*, 635 A.2d 908, 916 (D.C. 1993) (quoting Restatement (Second) of Torts, § 18).  A critical element of battery is *contact* that is harmful or offensive.  *See Haim v. Islamic Republic of Iran*, 425 F.Supp.2d 56, 70 (D.D.C. 2006); *Marshall v. District of Columbia*, 391 A.2d 1374, 1380 (D.C. 1978); Restatement (Second) Torts, §§ 18, 21; *cf. Etheredge*, 635 A.2d at 916 (defining *assault* under D.C. law as an *attempt* or *threat* of physical harm).  Because there is no evidence in the record that Rabbi Berenbaum actually came into contact with any non-kosher food, his battery claim cannot possibly survive summary judgment.  (*See* Def. Mem. in Supp. of Summ. J., Ex. 3, Berenbaum Tr. 38:4-5 (testifying that could "not affirmatively state [he] ate unkosher food")).

Moreover, Rabbi Berenbaum's reliance on *Sowell* is inapposite here as well.  As discussed earlier, *Sowell* applied the more lenient "zone of danger" standard for negligent infliction of emotional distress.  623 A.2d at 1224-26.  Because an actual physical impact

---

[2] Melissa Patack's claim for battery is moot since she was dismissed as a plaintiff in this case. (Minute Order, *Siegel* v. *Ridgewells, Inc.*, 05-cv-1717, Mar. 26, 2007.)

is necessary to prove battery, *Sowell* is irrelevant as to whether consuming non-kosher food constitutes, as a matter of law, "offensive or harmful contact" under the law of battery in the District of Columbia. Accordingly, the defendant's motion for summary judgment will be GRANTED as to this count as well.

### IV.   INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

Finally, Mr. Siegel moves for summary judgment on Ridgewells' third counterclaim for intentional interference with prospective economic advantage. His contention, in essence, is that discovery has yielded no evidence to support this openly general and imprecise claim and that any concerns by consumers are understandable in light of Ridgewells' conduct. For the following reasons, the Court will grant summary judgment.

"To establish a claim for intentional interference with prospective economic advantage under District of Columbia law, the evidence must show: (1) the existence of a valid business relationship or expectancy; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage." *Houlahan v. World Wide Ass'n of Specialty Programs and Schools*, 2006 WL 2844190, at *1 (D.D.C. Sept. 29, 2006) (citing *Bennett Enters., Inc. v. Domino's Pizza, Inc.*, 45 F.3d 493, 499 (D.C. Cir. 1995)); *see also Brown v. Carr*, 503 A.2d 1241, 1247 (D.C. 1986) ("To establish a prima facie case of interference with business relations, a plaintiff must

11

show that the interference was intentional and that there was resulting damage." (citation and internal quotation marks omitted)). The expectancy of a business relationship can also include interference for future contracts. *Carr v. Brown*, 395 A.2d 79, 84 (D.D.C. 1984). Ridgewells, unfortunately, has demonstrated neither here.

Specifically, Ridgewells has pointed to nothing tending to support the termination of an expectant contract or resulting damages. The only purported evidence it has ventured is that Mr. Siegel "threatened" to put Ridgewells out of business and that "Ridgewells has become aware of individuals who are concerned about Ridgewells' ability to provide kosher catering as a direct result of the false and actionable accusations brought in this case." (Def. Mem. in Opp'n, Ex. 10.) Nothing in the pleadings indicates that Ridgewells has located any evidence supporting its assertion that Mr. Siegel actually interfered with any existing or prospective catering contracts. Thus, defendant's counterclaim for intentional interference with prospective business advantage fails to raise a genuine issue of material fact sufficient to allow a jury to find in defendant's favor, and Mr. Siegel is entitled to summary judgment on this claim.

## CONCLUSION

For all of the foregoing reasons, the Court GRANTS in part and DENIES in part defendant's Motion for Summary Judgment. Additionally, the Court GRANTS in part and DENIES in part plaintiffs' Motion for Summary Judgment. An appropriate Order will issue with this Memorandum Opinion.

　　　　　　　　　　　　　　　　　　／s／ Richard J. Leon
　　　　　　　　　　　　　　　　　　RICHARD J. LEON
　　　　　　　　　　　　　　　　　　United States District Judge